UNITED STATES *v.* AMERICAN WATER-WORKS Co.

*(Circuit Court, D. Nebraska.   March 1, 1889.)*

WATER COMPANIES—TARIFF OF CHARGES—CONSTRUCTION.

The Omaha water-works ordinance provides that the company shall furnish water to citizens residing along the line of its mains at certain rates, and gives a tariff for dwelling-houses according to the number of rooms and other buildings of different kinds. Rents for other purposes are fixed by meter-rates, lowering inversely to the amount of water taken. *Held,* that the company has the right to treat each building separately; and the United States, as owner of the Fort Omaha reservation,—a tract of many acres, on which are dwellings for officers, hospitals, warehouses, and barracks,—is not entitled to be supplied as a single consumer.

In Equity.   Injunction.

*George E. Pritchett,* for the United States.

*J. M. Woolworth, John L. Webster,* and *Lake & Hamilton,* for respondent.

BREWER, J.   This is a bill brought by the United States to enjoin the defendant from taking up its water-mains or shutting off the supply of water heretofore furnished by it to Fort Omaha. The facts are these: The government, complainant herein, owns a reservation of many acres known as "Fort Omaha," upon which are situated a number of buildings, among them dwelling-houses for officers, hospitals, warehouses, and barracks for at least a regiment of troops. In 1870, the state of Nebraska ceded jurisdiction over this tract of land to the general government. At that time it was a mile or two distant from the limits of the city of Omaha. The defendant is a corporation having authority by ordinances and contracts to lay down its water-mains in the streets of the city of Omaha, and obliged to supply its citizens and inhabitants with water in accordance with the provisions of the ordinances. Some years since the gov-

ernment made a contract with defendant to extend one of its mains to Fort Omaha, and supply the buildings on the premises with water at a stipulated sum. This contract, by its terms, expired at the end of one year, but similar contracts have been made from year to year, the last one expiring about the 10th of last July. In 1887 the exterior limits of the city of Omaha were extended so as to include said military reservation and fort. At the expiration of the contract last July, the complainant declined to enter into another, and insisted that it was entitled to the privileges of a citizen or inhabitant of the city of Omaha, and a supply of water from the water-works of the defendant at ordinance rates, and for all the buildings on the fort reservation to be considered as one consumer. The defendant declined to supply water under these terms, and was proceeding to take up its mains, when this bill was filed.

The facts are all agreed upon, and but two questions have been presented and argued. *First.* Has the government, in respect to this reservation, any rights under the ordinance of the city, or power to compel the defendant to supply it with water? The argument, briefly stated, is that this reservation, though within the exterior limits of the city of Omaha, is not a part of it, or even a part of the state of Nebraska, because jurisdiction has been ceded to the general government. The city has no power to enter on this reservation, open, grade, or improve streets, or exercise any municipal powers, or discharge any municipal duties within its limits; hence conversely, neither the government, as the owner of the ground, nor any of the persons dwelling upon the reservation as individuals, have any rights as against the municipality or under its ordinances. The cases of *Railroad Co.* v. *Lowe,* 114 U. S. 525, 5 Sup. Ct. Rep. 995, and of *Railroad Co.* v. *McGlinn,* 114 U. S. 542, 5 Sup. Ct. Rep. 1005, and the cases cited in the opinion, are referred to as authorities upon this question. It may turn, partially at least, on the true intent and meaning of the contracts and ordinances heretofore referred to. Perhaps a fair construction would require the defendant to furnish water to all within the outer boundaries of the city, irrespective of the question whether any individual or property is within the territorial jurisdiction of the municipality. I shall not, however, decide that question, but pass to the other, the answer to which must be against the contention of the complainant, and fatal to this bill. As heretofore stated, the reservation or fort is a tract of many acres, upon which are situated many houses and other buildings. Now, it makes a very material difference whether all these houses and buildings are to be treated separately by reason of the separate occupancy, or as a unit by reason of the single proprietorship of the government. The average amount of water delivered to the reservation has been 20,000 gallons per day. The meter rates, as fixed by ordinance, are 100 to 500 gallons per day, 35 cents per 1,000 gallons; 4,000 gallons per day, 15 cents per 1,000 gallons. Now, if each building is to be treated as a separate consumer, the water would have to be paid for probably at the rate of 35 cents; whereas, if all are to be treated as simply one consumer, then 15 cents per 1,000 gallons would be the price. That under the ordinance the water company has a right

to treat each building as a separate consumer, seems to me very clear. Section 10 of the ordinance is the one that prescribes the rates. It reads as follows:

Any person, company, corporation, or association, or their assigns, who shall construct such water-works shall furnish water to citizens residing along the line of said mains, or contiguous to the same, at all times when any such water-works shall be maintained, at rates which shall not exceed the following tariff, to-wit:

### TARIFF OF WATER-RATES.

| | | |
|---|---:|---|
| Dwelling-houses, not exceeding five rooms, - - | $ 6 00 | per annum |
| Each additional room, - - - - | 75 | " |
| Banks, including one wash basin, - - - | 10 00 | " |
| Bakeries, average daily use for each barrel of flour, | 3 50 | " |
| Barber shops, one chair, - - - - | 5 00 | " |
| Barber shops, each additional chair, - - | 2 50 | " |
| Bath-house, public, per tub, - - - $7 00 to | 15 00 | " |
| Bath-rooms, private, per tub, - - - | 3 50 | " |
| Bath-rooms, each additional tub, - - - | 2 00 | " |

Beyond these particular tariffs quoted are some 75 or 100 special tariffs, and then the section closes with these words:

Rents for all purposes not herein named will be fixed by meter measurements, as may be agreed upon between consumers and water company, not exceeding meter rates.

### METER RATES.

| | | | |
|---|---|---|---|
| 100 to 500 gallons per day, at the rate of | - | 35 cts. | per 1,000 gal. |
| 500 to 1,000 " " " - | | 30 " | " |
| 1,000 to 2,000 " " " | - | 25 " | " |
| 2,000 to 4,000 " " " | - | 20 " | " |
| Over 4,000 " " " | - | 15 " | " |

Obviously the whole scope of this section is to give to the water company a right to treat each building separately. That, by the agreed statement of facts, has been their constant practice, and any other construction would work injustice to it. The very fact that all the special rates prescribed make no reference to ownership of buildings or property, shows that the question of ownership is immaterial, and that the rates depend upon the character of the property, and the probable extent of the use. Take the first two items: it is not to the owner of the dwelling-house not exceeding five rooms, but for the house itself, and for each additional room. The same principle should apply to a large property like the reservation, upon which are many buildings. The question is not who owns all this, but what is the character of the buildings, the number of them, and the uses to which they are put. And the meter rates are to be construed as merely a substitute for the special rates, giving the right to pay for the amount of water, rather than upon the character and size of the building. Suppose some one in the city owning a block of ground should put up 20 or 30 residences to rent; it would be a clear violation of the spirit of this ordinance to permit him to supply all these houses as though they constituted one property. Indeed, as nothing is said about contiguity, if ownership was the test, a

man having buildings, residences, stores, and factories scattered in different parts of the city might insist upon a supply to all at the lowest rate; or, as neither ownership nor contiguity is spoken of, why might he not contract for all the water from defendant, and subcontract it to various consumers in the city? I think there can be little doubt on this. The practice which has obtained ever since defendant's water-works were established correctly interprets the ordinance, and expresses its true spirit and meaning; and that gives defendant the right to treat each building as a separate consumer, and charge either for the building or at meter rates accordingly. This being the true interpretation of the contract, it follows that complainant's case must fail, and a decree must go dismissing the bill.