CASE 2—ACTION BY JULIUS BERENDS AGAINST THE BELLEVUE WATER
& FUEL GASLIGHT CO. FOR CONSTRUCTION OF WATER SUPPLY CON-
TRACT.—NOVEMBER 11.

# Berends v. Bellevue Water & Fuel Gaslight Company.

APPEAL FROM CAMPBELL CIRCUIT COURT—A. S. BERRY, CIRCUIT JUDGE.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.   AFFIRMED.

WATER COMPANIES—CONTRACT OF SERVICE—CONSTRUCTION—HOUSES—
SEPARATE APARTMENTS.

1. Where a contract between a city and a water company pro-
vided that the cost of furnishing water to manufacturers and
large consumers was to be estimated according to the size of the
establishment, etc., the term "large consumers" does not include
persons taking water for ordinary family use; the service to be
rendered to such persons being covered by another provisions of
the contract containing a schedule based upon houses having a
certain number of rooms, and whether occupied by one or more
families.
2. A contract between a city and a water company for the furnishing
of water to the city and its inhabitants provided that, for any
extension or alteration in any of the water fixtures of any con-
sumer, written permits from the superintendent must be ob-
tained, and any consumer desiring an extension for the purpose
of supplying neighboring premises would receive permission
to do so on condition that he would become responsible for the
payment of the water rent for all the premises so supplied, so
long as such extension were available for supplying anybody
with water. HELD, that such provision only imposed on the
water company the duty to provide service where mains had not
been laid, on the assurance of the owner of the property to be
served that he will pay or guaranty payment of water rents to
accrue, and did not alter the rates previously fixed by the con-
tract for services.
3. Where a plaintiff constructed a building 35x100 feet under a single
roof, comprising six tenements, which were separated from each
other by solid walls, each rented to separate tenants, each tene-
ment, and not the entire building, constituted a house, within
a contract between a city and a water company containing a

Berends v. Bellevue Water & Fuel Gaslight Co.

schedule of water rates to be charged for services, varying according to the number of rooms in the house, and the number of families occupying the same.

GRAY & HALL, ATTORNEYS FOR APPELLANT.
    (No brief in the record.)

MATT. HEROLD, FOR APPELLEE.

### POINTS AND AUTHORITIES.

1. Injunction to prosecute an action will not lie upon the ground that no appeal lies therefrom. High on Injunctions, sec. 93; Blair v. McCann, 23 Ky. Law Rep., 1228; Scott v. Tulley, 20 Ky. Law Rep., 1734.

2. Nor is the ground of multiplicity of actions well taken there, being only one action pending and only two persons party to this action. High on Injunction, sec. 61.

3. Appellant could and did set up all the defenses and grounds for an injunction in his counter-claim in the action he sought to enjoin, therefor his petition for an injunction in the second action was proper. Moore's Admr. v. Sheppard, etc., 1 Metcalf 97.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

The city of Bellevue by ordinance contracted with the assignor of appellee to install a water and gas service within the city for the use of the municipality and its citizens. For the public service, agreed prices were fixed. For the private service, it was stipulated that it should not exceed 25 per cent. advance upon the then existing rates for similar service fixed by the city of Newport, Ky. Under the ordinance, appellee did install the service, and is yet maintaining it. Appellant owns a lot in the city of Bellevue, on which he has erected a building 35 feet by 100 feet, comprising six tenements. The whole building is under one roof, but there is no way of internal communication between the several apartments; each being separated from those adjoining by solid walls. They are rented to tenants; a family occupying each of them, except one, which is partly a store and part residence, occupied by appellant. At the instance of appellant,

appellee connected these several apartments with its water main by separate connections, and charged and collected the established rates from each apartment as if it were a separate building.

The Newport water tariff rate, upon which the Bellevue rate is based, as above indicated, is as follows:

"For families occupying a house containing:

| | | | | | |
|---|---|---|---|---|---|
| 1 or 2 rooms | .................... | $ 4 00 | per annum |
| 3 or 4 " | .................... | 5 00 | " " |
| 5 or 6 " | .................... | 6. 00 | " " |
| 7 or 8 " | .................... | 8 00 | " " |
| 9 or 10 " | .................... | 10 00 | " " |
| 11 or 12 " | .................... | 11 00 | " " |
| 13 or 14 " | .................... | 13 00 | " " |
| 15 or 16 " | .................... | 14 00 | " " |

"Houses containing more than 16 rooms to be charged at the rate of fifty cents for each additional room.

"Houses occupied by more than one family to be charged at the above rates for one family, and two dollars and fifty cents for each additional family. . . .

"All manufacturers and large-consumers to be estimated according to size of establishment, and for every fifty hands employed an additional charge of $5 per annum, or the amount shall be determined by meter, at ten cents per thousand gallons."

The eleventh section of the rules and regulations further provides:

"Extensions and Alterations. For any extension or alteration in any of the water fixtures of any consumer, written permits from the superintendent must invariably be obtained by the authorized plumber engaged to do the work, before any extensions or alterations can be made.

"Any consumer desiring an extension for the purpose of

supplying neighboring premises with water, will receive permission to do so on condition that he will become responsible for the payment of the water rent for all premises so supplied, so long as the extensions are available for supplying anybody with water."

Section 23 reads:

"Water consumers can have meters attached to their service pipe whenever it may be desirable; or the board of trustees (of the water company) may attach meters whenever they deem it proper to do so. When meters are attached the consumer shall bear all expenses attending the attaching and use of the same."

Appellant wanted to discontinue the separate service as installed for his several tenements, and to have substituted one meter, for which he offered to pay, and offered also to pay for all the water consumed by himself and all his tenants at the company's established meter rates.

This suit involves the construction of the contract with the city, and particularly the sections quoted above. It is appellant's contention, which was rejected by the circuit court, that his building was one house, only; that he was a "large consumer," within the meaning of the contract quoted, and was entitled to have the service for his entire building by guarantying and paying the fixed meter rate. The contrary contention is that appellant's building is in fact, and in the contemplation of the contract, six houses, for each of which appellee is entitled to charge the schedule fixed by the ordinance and contract for houses of the number of rooms which these respectively contain.

The "large consumer" meant to be provided for by the contract does not mean persons taking the water for ordinary family use. That is fully covered by the schedule based upon houses having a certain number of rooms, and whether

occupied by one or more families. From the place it occupies in the contract—its connection with other characters of service enumerated—we think it means concerns like manufactories, and differing more or less from those instances specifically provided for.

Nor can section 11, providing for extensions, be held to alter the basis of charges expressly stipulated for. That means only that when the company has not laid its conduits or mains, and has not provided for the service of a given locality, it agrees to do so upon the assurance of the owner of the property to be served that he will pay or guaranty the payment of such water rents as may accrue by reason of the extension. It does not at all attempt to alter the rates already and elsewhere in the contract fixed for the service. The amount to be paid, and therefore guarantied, will depend upon the character and use of the buildings to be supplied by the extension.

This narrows the case down to a determination of what is a house, within the meaning of the contract. Bouvier says: "If a house, originally entire, be divided into several apartments, with an outer door to each apartment, and no communication with each other subsists, in such case the several apartments are considered as distinct houses." In Tracy v. Talbott, 6 Mod., 214; Henrette v. Booth, 15 C. B. N. S., 500; Richards v. Swansea I. & T. Co., 9 Chan. Div., 425, Q. B.; Dyson v. Sheley, 11 Mich., 527; Tiernan v. His Creditors, 62 Cal., 286; Yorkshire F., etc., Ins. Co. v. Clayton, 8 Q. B. D., 421; Chapman v. Royal Bank of Scotland, 7 Q. B. D., 136. The test generally applied in the case is whether the structure is capable of habitation by man, and has independent occupation and actual severance. A case quite similar to the one at bar arose in the Circuit Court of the United States for the District of Nebraska in 1889, decided

by Brewer, J. United States v. American Waterworks Co., 37 Fed., 747. The contention was that the United States government, owning and maintaining a military reservation of fort and barracks in the city of Omaha, was entitled, under the terms of an ordinance like the one in this case, to have all the buildings and houses on the military reservation furnished with water at rates available to one customer. The court held that the unit of charge was not that of proprietorship, but of separate occupancy and character of the property, and that such was deducible from the tariff rates. Whether the structures severally occupied by different families be under one roof or not could not have entered into the contemplation of the parties as a controlling feature in the making of this contract. It was the quantity of water that would probably be consumed. The size of the house and the character of its use were made the unit of charge, not the ownership.

The judgment of the circuit court, having been in conformity with these views, is affirmed.