CASE 91—ACTION FOR AN INJUNCTION—MAY 7.

# Louisville & Nashville R. R. Co. v. Bowling Green Ry. Co.

### APPEAL FROM WARREN CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFFS APPEALS.    AFFIRMED.

RAILROADS—RIGHT. OF STREET. RAILROAD. TO. CROSS—MUNICIPAL AUTHORITY—JURISDICTION OF RAILROAD COMMISSION—WHAT CONSTITUTES "REASONABLE AND FEASIBLE" CROSSING.

Held:  1. Kentucky statute, section 767, forbidding the construction of one railroad across another without the approval of the railroad commission, does not apply to the crossing of a trunk railroad by a street railroad, as street railroads, by Id. section 821, are expressly excepted from the jurisdiction of the railroad commission.

2. Where a street-railroad company prior to the adoption of the present Constitution constructed its road over certain streets of the city under an ordinance by which the city reserved the right to declare forfeit the right of way and privileges "therein granted over such streets or parts of streets as said company should not have occupied by constructing and operating a line of street cars as therein provided at any time after five years from the 'passage of the ordinance," no forfeiture having been declared by the city, the company had the right after the adoption of the Constitution, and more than five years after the passage of the ordinance, to extend its line over other streets and parts of streets named in the original ordinance, without becoming the highest and best bidder for the privilege, as required by Constitution, section 164, as the grant was an entirety, and the Constitution did not repeal any part of it; work having been begun thereunder prior to the adoption of the Constitution.

3. A city ordinance granting to a street-railroad company the right to operate its cars by electricity was valid, though the company was authorized by its charter to operate its cars only by animal power, and the grant made by the city became effective when the company was subsequently authorized by its charter to operate its road by electricity.

4. Constitution, section 216, providing that "all railway, transfer,

belt line and railway bridge companies shall allow the tracks of each other to unite, intersect and cross at any point where such union; intersection and crossing is reasonable or feasible," applies to street railroads as well as steam railroads, and restricts the right of a street railroad to construct its track across the tracks of a steam railroad in the streets of a city to cases where the crossing is reasonable or feasible.

5. The crossing at grade of a trunk railroad by an electric street railroad in a narrow street will not be enjoined as unreasonable or not feasible merely because several tracks will be crossed, and forty or forty-five trains pass each day, or because the overhead wires will be a source of danger in the operation of trains, and street cars may stop on the track by reason of the failure of the current.

JUDGES GUFFY, DuRELLE AND O'REAR, DISSENTING.

MITCHELL & DUBOSE, W. D. HINES & E. W. HINES, FOR APPELLANT.

WM. MARSHALL BULLITT AND THOMAS W. BULLITTT, FOR APPELLEE.

(No briefs in the record.)

JUDGE HOBSON, DELIVERED THE OPINION OF THE COURT.

This action was brought by the appellant, the Louisville & Nashville Railroad Company, against the appellee, the Bowling Green Railway Company, to enjoin it from extending the tracks of its electric street railway across the tracks of the railroad of appellant at grade on Main street, in the city of Bowling Green. The line of the street railway, as originally constructed, ran from the boat landing on Barren river up Gordon avenue, and crossed the railroad track at an underneath crossing, passing then along Adams street, went up Adams street to Main. The street railway company objected to this route because it passed through a sparsely-settled portion of the city, where there was little custom; and the underneath crossing at the railroad was regarded dangerous, as it was in a curve, and the motorman could not see teams approaching the cross-

ing from the opposite direction, and they could not know
of the approach of the street cars. It therefore deter-
mined to change its route so as to come up Church street
to Nugent, thence to Main, and thence up Main, across the
railroad, to the existing track. The situation is shown
on the following map, in which the old route is indicated
by a black, and the new by a red, line.*

---

*The heavy line on the plat is the black line here referred to, and the chain
line is the red one.

As will be seen from the map, the main track of the railroad, and two side tracks near it, cross Main street not far from its station. There are also two spur tracks for the delivery of cars to private persons crossing Main street at the intersection of Clay. The railroad company has for more than forty years operated its line through Bowling Green on its present location. It constructed its tracks by municipal authority, and runs over them something like forty or forty-five trains a day. It constructed on the square bounded by Clay, Main, and Adams streets, shops, roundhouses, depots, and other buildings; and the tracks across Main street are used by it much, both by day and night, for the passage of its trains, and for switch engines and cars. It insists that by reason of the travel on the street by footmen and vehicles, and the passing of the engines and trains, the crossing is a very dangerous one, and that the danger will be greatly increased if the street car line is also built along the street, crossing the railroad tracks at grade. An injunction was obtained restraining appellee from building its track on the route proposed. This was discharged by the court below on final hearing, and the petition of appellant was dismissed.

A number of interesting questions have been presented on the appeal:

1. It is insisted that, as the railroad commission has not authorized this crossing, appellee is without legal authority. The statutes relied on are as follows: "Every corporation proceeding to construct its road in or through any county shall file and have recorded at its expense in the county clerk's office of such county, a map of the route, showing the center of said proposed road, and the width thereof; and if, after a road is located, it is desired to change its location, or the proposed route is changed, as

it may be, a map showing such change, as well as the center and width thereof, shall be filed and recorded at its expense in the county clerk's office of the county in which the change is made. If the proposed route as indicated by the map, crosses the line of any other railroad, notice of such fact shall, before the construction of the road is commenced near the point of crossing, be given to the railroad commission, who shall give notice to the corporation whose road it is proposed to cross, as well as the other corporation, of the time and place it will meet to consider the question of approving the crossing, if objection be made thereto; and the commission may determine the manner in which the crossing shall be made to protect against accidents thereat." Kentucky Statutes, section 767. "There is established a department in th State Government to be known as the railroad commission, which shall be composed of three commissioners, one of whom shall act as chairman, and whose duty it shall be to see that the laws relating to all railroads except street, are faithfully executed, and to exercise a general supervision over the railroads of the State. Each of said commissioners is authorized to administer oaths and two of them shall constitute a quorum." Kentucky Statutes, section 821. The words "except street" in section 821 could only have been used by the Legislature for the purpose of excluding street railroads from the jurisdiction of the railroad commission. The Legislature had the power to define its jurisdiction, and could not have used more apt words to show an intention to leave street railroads within the jurisdiction of the municipal authorities, as they had been theretofore. The language of section 767 also points to the same conclusion. The requirement that the corporation shall file in the county clerk's office a map of the route, showing

the center of the proposed road and the width of it, cannot reasonably apply to a street railroad, which acquires no width of right of way, but only the right to lay tracks in streets. It is urged, however, that as the railroad commission has jurisdiction over the appellant's railroad, and is required to see that the laws relating to all railroads are faithfully executed, the commission has power of supervision over the construction of the crossing in question. If this were true, then the commission would also have jurisdiction over all crossings of railroads at grade by streets, turnpikes, or even county roads. Such was clearly not the intention of the Legislature. There are peculiar reasons why the municipal authorities should have control of the construction of street railways in the interest of the local community. This has been the legislative policy of the State for years, and we see nothing in the statutes to change it. It follows, therefore, that the railroad commission properly declined to take jurisdiction in the matter.

It is urged for appellant that appellee has not municipal authority for the construction of its track along Main street as proposed. By an ordinance of the city council passed in 1888, the city granted to the street railway company the right to construct its track on Main street from the reservoir to the city line on the west, and to operate its cars thereon by animal power or electricity for the term of fifty years. As will be seen from the map, the street car company did not construct its line then on the part of Main street now in question. There was no limitation in the ordinance as to the time in which the tracks were to be laid throughout Main street; and appellee would have the right, nothing else appearing, to extend its track as it might be able to do from time to time.

Besides, by an ordinance of March 5, 1895, this grant was ratified, and the right of way given to construct the tracks as proposed. In the ordinance of 1888, it was provided that the city council reserved the right by resolution to declare forfeit the right of way and privileges "therein granted over such streets or parts of streets as said company should not have occupied by constructing and operating a line of street cars as therein provided, at any time after five years from the passage of the ordinance." The reservation of the right to forfeit the privileges granted after five years over such street as had not been occupied made the grant defeasible to this extent, but the title vested in appellee subject to the rights of the city council to declare it forfeited for nonuser after five years. This right the city council might or might not exercise at its discretion. If it did not exercise it, the title of appellee remained. It is insisted that sections 163 and 164 of the Constitution forbids this. Section 163, so far applicable, is in these words: "No street railway . . . within a city or town shall be permitted or authorized to construct its tracks . . . along, over, under or across the streets, alleys, or public ground of a city or town without the consent of the proper legislative bodies or boards of such city or town being first obtained; but when charters have been heretofore granted conferring such rights and work has in good faith been begun thereunder the provisions of this section shall not apply." The city council had in this case given its consent, and work had in good faith been begun under the grant before the adoption of the Constitution. It is immaterial that the track had not been constructed throughout Main street at that time. The selection of one route did not exhaust the grant, or disable appellee thereafter from extending its line. The

grant was an entirety, and, work having been begun under·
it before the adoption of the Constitution, the section·
quoted has no application.   Section 164 provides that no·
city "shall be authorized or permitted to grant any fran-
chise or privilege or make any contract in reference there-
to for a term exceeding twenty years," and that such grants·
shall be awarded to the highest and best bidder.   This
section and the statute made to carry it out (Kentucky Stat-
utes, section 3290) obviously has no application, because,
as we have shown, the right was granted in 1888, and the
title vested then, subject to a defeasance which did not
·occur, and was absolute. It is also urged that at the time
the ordinance of 1888 was adopted the charter of the street
railway company only authorized it to operate a street rail-
way by animal power, and that therefore the grant by the·
city of the power to operate it by electricity was void.
Appellee had to obtain authority from both the city coun-
cil and the State Legislature for the operation of its rail-
road.   It is not material which of them first granted the
authority to use electricity.   The grant by the city was·
in anticipation of a similar grant by the State, and could
not be used until that was obtained.   It is a universal
rule that a grant will never be held void if it can reason-
ably be upheld, and under this rule the grant by the city
of the right to use electricity should be construed as·
taking effect when the Legislature had also conferred the
power.   A somewhat similar question was presented in·
Duke v. Navigation Co., 10 Ala., 82, (44 Am. Dec., 472),
where the Legislature of Alabama conferred on the cor-
poration the power to collect tolls on the Cahawba river.·
Subsequently an act of Congress was passed assenting to·
the Alabama act.   It was held that the subsequent assent
of Congress vested the corporation with power to collect

tolls. The court said, speaking of the two acts: "These acts are certainly entitled to be considered as passed by each body with reference to the powers delegated to them, and it is but just to our Legislature to presume they were guided by the ordinance [under which the State was was organized], and did not intend to invest the company with the right to charge tolls, unless the consent of the United States should be given, if that consent was necessary to the validity of the act." See, also, 5 Thomp. Corp., section 5802; Mor. Corp., section 144. We therefore conclude this objection can not be maintained.

3. This brings us to appellant's pivotal contention,—that the crossing will be so dangerous that the court should not permit its construction. The weight of authority is to the effect that there is no jurisdiction in equity to enjoin a street railway from crossing a steam railroad's track at grade in a public street unless such jurisdiction has been conferred by statute or some constitutional provision. Elliot, Roads & S. (2d Ed.) section 699; Texas & P. Ry. Co. v. Rosedale St. Ry. Co., 64 Tex., 80; Kansas City, St. J. & C. B. R. Co. v. St. Joseph Terminal R. Co., 97 Mo., 457, (10 S. W., 826), (3 L. R. A., 240); Buffalo R. Co. v. Du Bois Traction Pass. Ry. Co. (Pa.) 24 Atl., 179; West Jersey R. Co. v. Camden, G. & W. R. Co., 52 N. J. Eq., 31, (29 Atl., 423); Chicago & C. T. R. Co. v. Whiting, H. & E. C. St. Ry. Co., 139 Ind., 297, (38 N. E., 604), (26 L. R. A., 337); Same v. Hammond, W. & E. C. El. Ry. Co., 151 Ind., 577, (46 N. E., 999); Chicago, B. & Q. R. Co. v. West Chicago St. R. Co., 156 Ill., 255, (40 N. E., 1008); New York, N. H. & H. R. C. v. Bridgeport Traction Co., 65 Conn., 410, (32 Atl., 953), (29 L. R. A., 367); Railroad Co. v. Steel, 47 Neb., 741, (66 N. W., 830); Philadelphia, W. & B. R. Co. v. City of Wilmington R. C., (Del. Ch.) 83 Atl.,

1067; Southern R. Co. v. Atlanta Rapid Transit Co. (Ga.) 36 S. E., 873. This court has heretofore refused to interfere. See Bridge Co. v. Krieger, 93 Ky., 243, (19 S. W., 738); Louisville Bagging Co. v. Central Passenger R. Co., 95 Ky., 50, (23 S. W., 592); Elizabethtown, L. & B. S. R. Co. v. Ashland & C. St. Ry. Co., 96 Ky., 347, (26 S. W., 181). Appellant, however, relies on section 216 of the Constitution: "All railway, transfer, belt lines and railway bridge companies shall allow the tracks of each other to unite, intersect and cross at any point where such union, intersection and crossing is reasonable or feasible." It is earnestly argued for appellee that this section applies only to railroads, and not to street railways. It is also insisted that it applies only to crossings of a right of way where otherwise the right to cross might not exist; that it was intended to enlarge, and not to restrict, the right of one company to cross another's track. We have been unable to find anything in the Constitution to exclude street railroads from the operation of section 216. The language of the section is broad enough to cover all railways. A constitutional provision should not be narrowed by construction, but must be liberally construed to effectuate its purposes. The provision that crossings shall be allowed when reasonable or feasible is necessarily a restriction of the right to such as are reasonable or feasible. To hold that the section only applies to crossings of the right of way, and not to crossings in streets, would be to add to the section an exception which the general words used do not justify. We are therefore brought to the question whether the crossing in contest is reasonable or feasible. It is shown by appellant that the trolley wires over head will be a source of danger in the operation of its trains; also that electric cars are liable to stop from

failure of the current, and that this may occur on the crossing; and that the passage of the regular trains on the railroad will delay the street cars. All these objections would exist at any grade crossing, and if they were sufficient it would follow that there could be no grade crossings of such a railroad by the street car line. This court held otherwise in the case of Elizabethtown, L. & B. S. R. Co. v. Ashland & C. St. Ry. Co., 96 Ky., 347, (26 S. W., 181), and we do not think such a rule is in keeping with the spirit of the constitutional provision. When we come to the peculiar features of this crossing, a question of more difficulty is presented. The number of tracks crossed, and the number of trains passing, as above stated, present a state of case where, if the crossing was not in a street, we would have great doubt if it should be allowed. For instance, if a crossing was allowed over appellant's tracks and yards on the square north of Main street, this would destroy the yard. But the public has a right to the use of the street, as well as the railroad company. It has no right to make an unreasonable use of the street. A part of the testimony as to the dangerousness of the crossing and the length of time it is obstructed by the trains may, to some extent, grow out of the use by appellant of its tracks at this point in switching and making up its trains. While it is entitled to a reasonable use of the street for the passage of its trains, it has no right to make an unreasonable use of it. And as the public has the right to cross, subject to the reasonable use of its tracks by appellant, we are unable to see that the addition of the street car line will so materially change the situation that the crossing should be declared unreasonable or not feasible. To illustrate: If appellee had undertaken to run a bus line from the landing on the river to the

central part of the city, crossing the railroad at this point at regular intervals, just as the street cars will do, clearly appellant could not have enjoined its operation. It is shown that the street is a narrow one, and that when the gates are down it frequently becomes congested with vehicles. But a street car in addition will add little more to the congestion than a bus would. A flagman is maintained at the crossing. It appears from the proof that an approaching train can be seen for some distance on either side, and, if this space were built up, the flagman, with his gate, would give warning of danger. It is true, the flagman may be negligent; but this might occur anywhere, and the danger to the car is no greater than that to other vehicles on the street. On this subject the trial court said: "All such crossings are or may be made dangerous, yet they are common in many cities and towns. The plaintiff's trains have been crossing Main street in this city for more than forty years, but it can not be recalled that any accident of consequence has occurred at that point in all that time, the fact that it has not being due to the care that has always been exercised by plaintiff and its employes to prevent it; and by the exercise of proper care on the part of plaintiff and defendant, there is no reason why the dangers that may be incident to the crossing of plaintiff's track by defendant's road may not be avoided." In this conclusion we concur. Judgment affirmed.

Whole court sitting.

Dissenting opinion by Judge O'Rear:

While I concur in the majority opinion upon all its conclusions of the law, I dissent from the finding that the crossing in question is "reasonable and feasible," as contemplated by section 216 of the Constitution.

In my opinion, the record discloses such a state of facts as to show that the proposed crossing is both unreasonable and not feasible, and, further, that there is another point where the crossing could be effected that is both reasonable and feasible, and that the chancellor should, under principles of equity, as between these litigants, as well as upon grounds of safety of those using the cars of the respective railways, have granted and perpetuated the injunction sought.

Judge Du Relle concurs in this dissent. Judge Guffy also concurs in this dissent, save he is not satisfied as to all the conclusions of law stated in the majority opinion.