## Poggel, et al. v. Louisville Railway Company.

.(Decided October 16, 1928.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Street Railroads.—Ordinance intended to modify all street railway franchises, to make them uniform in terms and expire simultaneously within limits provided 'by Constitution, sec. 164, under which railway company voluntarily surrendered part of term of its franchises, held not invalid, as beyond power of city to withdraw franchises, by reducing number of years they were to run.

2. Municipal Corporations.—Under Ky. Stats., sec. 2742 et seq., authorizing city of Louisville to govern itself by such ordinances and resolutions for municipal purposes as it may deem proper, operation of street railway company within city was largely, if not wholly, a municipal matter.

3. Street Railroads.—Citizens and taxpayers of city of Louisville, not representing the Louisville Railway Company, are in no position to complain if company surrenders to city valuable rights, which it obtained from state, in view of Constitution, sec. 164, vesting rights in city, and fact that surrender of rights did not prejudice citizens of city.

4. Street Railroads.—Franchise granted by state to street railway company constitutes contract (between state and company, and may be modified by consent of all parties interested, including city, in which rights of state have been vested by Constitution.

5. Street Railroads.—Ordinance, containing agreement modifying franchises to street railway company relating to terms for which they shall run, held not objectionable, on ground that railway company could not agree to abolish franchise granted by state.

6. Street Railroads. Ordinance providing for adjustment of franchises between city and street railway company, relating to term for which they shall run, held not grant of new franchise, and hence did not require compliance with Ky. Stats., sec. 3037d-1.

7. Municipal Corporations.—General council represents inhabitants of city in their corporate capacity.

8. Street Railroads.—Ordinance modifying franchises of street railway company, to make them uniform in terms and expire simultaneously, within limits of Constitution, sec. 164, held not objectionable as attempt (by city to abrogate franchise granted by state, or repeal Constitution and statutes by nullification.

9. Municipal Corporations.—Court of Appeals has no control over general council of city of Louisville.

10. Municipal Corporations.—If city of Louisville enacts ordinance without authority, or without following controlling laws in such matters, Court of Appeals may declare such ordinance invalid.

11. Street Railroads.—Ordinance adjusting term of franchises to street railway company held not grant of new franchise by provi-

sion giving city right to purchase, or sell second franchise, if right to purchase is not exercised, since provision merely recited procedure, if ordinance had not so provided.

12. Municipal Corporations.—City council does not have power to limit its legislative discretion by covenant.

13. Carriers.—Ordinance adjusting street railway franchises, providing for change in rates initiated by general council after hearing, and for filing of proposed change in rates with general council and board of public works, and for approval thereof by general council, held not objectionable, as depriving general council of legislative power to fix and determine rates, but specifically reserved such power.

14. Street Railroads.—Ordinance adjusting street railway franchises, if imposing burden on street railway company, by forbidding issuance of securities by company without approval of board of public works, in violation of Constitution, sec. 179, cannot be complained of by citizens of city, but only by company.

15. Street Railroads.—Ordinance adjusting street railway franchise, requiring city to give assent to issuance of any securities by railway company, did not make city guarantor of such securities, or pledge credit of city to railway, in violation of Constitution, sec. 179, especially where ordinance specifically provided that it should not be understood as lending credit of city to railway company.

16. Arbitration and Award.—Arbitration has always been favored by courts.

17. Municpal Corporations.—Ordinance adjusting street railway franchise, providing for arbitration of disagreements over questions of operating practices, costs, rate of amortization, expenditures for capital account, and construction of ordinance, provided for arbitration as fact-finding procedure, and was not void as surrender of legislative authority of city.

18. Municipal Corporations.—Ordinance adjusting street railway franchise, providing that board of public works shall have regulatory power over operation of railway company, which went no further than to confer administrative duties on board, held not void, as imposing on board powers not granted by city charter, or which could not be delegated by council.

19. Municipal Corporations.—City cannot delegate to committee or officer power to decide on legislative matters properly resting in judgment and discretion of councli.

20. Municipal Corporations.—Ordinance adjusting street railway franchises, not setting out in full and re-enacting provisions of first ordinance which were to remain in force, as required by Ky. Stats., sec. 2777, held not in effect to repeal entire first ordinance.

J. FRANKLIN FAIRLEIGH for appellants.

CHURCHILL HUMPHREY, CHARLES W. MILNER and ALFRED SELLIGMAN for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellants are citizens and taxpayers of Louisville, Ky. The appellee is the railway company operating a street railway business in that city. The complaining taxpayers filed a petition in equity, seeking an injunction against the railway company, which would prevent its operating under the provisions of two certain ordinances enacted by the general council of the city of Louisville. While appellants attack the validity of the ordinances on many grounds, the prayer of their petition is that the two ordinances shall be declared illegal, and that an injunction issue against the railway company, to prevent its entering into any contract with the city of Louisville pursuant to the provisions of the ordinances, or, if any contract has been entered into under the ordinances, the prayer is that the carrying out of such contract be enjoined, and the contract canceled. Coming down to matters more specific, the prayer is for an injunction which will prevent the railway company's undertaking to negotiate the sale of any new securities upon the faith and credit of either of the ordinances. The petition is a general attack on the validity of the ordinances, and while there is much in the petition relating to matters which may never happen, or, if they should come about, it will be far in the future, there is enough to make it necessary for the court to consider some, if not all, of the provisions of the ordinances which have been attacked.

It is conceded in the brief filed on behalf of appellants that the nature of the ordinances is sufficiently indicated by their title. One of the ordinances was enacted in 1922, and the other in 1926. The title of the ordinance of 1922 is as follows:

"An ordinance providing for an adjustment of the franchises of the Louisville Railway Company, recognizing the rights of said company to operate over certain streets now occupied by it, requiring a surrender of all other street rights, providing for uniform operation under regulation by the board of public works with recourse to arbitration, protecting the rights under outstanding mortgages and rights of present and future owners of Louisville Railway Company securities, establishing fare schedules and method for their application, setting out general

regulations, with penalties for disregarding the provisions of this ordinance.''

The title of the ordinance of 1926 is as follows:

''An ordinance relating to the Louisville Railway Company, adopting general principles of regulation, fixing the rate of fare, and imposing certain duties upon the board of public works in respect of the regulation of the company, making full reservation of police power, and repealing all provisions in conflict herewith.''

A number of questions are presented in the argument made by counsel for appellants in their brief, which are important, as contended by appellants, which makes it necessary for the court to consider the reasons advanced, and which are urged with insistence, for the court's holding that the ordinances are invalid. The chancellor went into the matter thoroughly and delivered a weighty opinion, denying appellants the relief which they sought, or any relief. The opinion of the chancellor upheld the validity of the ordinances. We shall give consideration to the arguments advanced against the ordinances in the order of their appearance in the rather extensive brief filed in behalf of appellants.

The first ground relied on by appellants is that the city has no power to withdraw or amend the franchise of the railway company, and that the railway company is without authority to relinquish or surrender its franchise to the city. This ground involves a consideration of those provisions in the ordinances which appellants say constitute an amendment to the franchise of the railway company, or the withdrawal thereof by the city, or a surrender of same by the railway company. We find that the 1922 ordinance makes provision for the adjustment of the franchises held by the railway company. The ordinance contains a long preamble, reciting the history of the franchise obtained by the railway company. It may be accepted as true that the franchises owned by the railway company were acquired largely by purchase from companies previously existing, but in some instances the franchise was obtained from the city of Louisville in the manner set out by the present Constitution of the state of Kentucky. In the old days there were the Louisville City Railway Company, the Citizens' Passenger Railway Company, the Kentucky Street Railway Company,

and the Central Passenger Railroad Company, all hold-
ing franchises granted by the Legislature of Kentucky,
and in the main they appear to have been for 99 years.
The franchises obtained by the railway company since
the adoption of the present Constitution generally relate
to franchises granted by the city beyond the original
limits of the city, in instances where the boundaries have
been extended. New franchises have also been obtained
where it was necessary to connect operations under the
old franchises, or where it was necessary to loop or re-
route cars. These examples illustrate the general pur-
poses of the new franchises. It is recited in the preamble
to the ordinance that the railway company has always
contended that the new franchises, except as to certain
portions of the Oak Street car line, either overlap the
older operating rights, or that they are an integral part
of such older operating rights, as they are of such minor
importance that they have become merged into the older
franchises. The city has never admitted that the new
franchises were merged into the older rights.

The Oak Street franchise appears to stand on a dif-
ferent basis, and it seems that it is so treated in the ordi-
nance which was enacted. It has many years to run, and
action as to that particular franchise, relating to the ad-
justment thereof, was deferred by the ordinance until
such time as the expiration of that franchise might ap-
proach. It is recited in the preamble that the railway
company was operating at the time under more than 70
distinct and several legislative and municipal enactments,
which differed among themselves, respecting the operat-
ing rights and conditions. By reason of these differences
the ordinance states that orderly public regulation of the
railway company as a unified system was not feasible.
It was, therefore, proposed to adjust the existing fran-
chises of the railway company to the present needs of
orderly public administration, and to modify them in the
details of their execution for the best interest of the city.
It is specifically set out that the ordinance does not pro-
pose to extend operations to any street, or portion of any
street, on which operations were not at the time con-
ducted; neither was it proposed to extend the limits of
any franchise grant. But, on the other hand, the purpose
was expressed to so modify all franchises that they
should be uniform in terms, and should expire simultane-
ously within the limits provided by section 164 of the
Constitution; that is, at the end of 20 years.

The first section of article 1 of the ordinance of 1922 provides that the city of Louisville recognizes for a term of 20 years, commencing upon the approval of the ordinance, the rights of the railway company to a street franchise, or the right to build, maintain, and operate a single or double track street railway system for the common carriage of passengers (and freight when and as authorized by the board of public works), operated by electricity or such other motive power as may from time to time be approved by the board of public works, with necessary incidental rights. Section 1 of article 4 of the ordinance provides that it will become effective upon its passage, with the provision that the railway company shall exercise no right under the ordinance, nor incur any liability thereunder, until it should approve the ordinance in the manner therein provided. The provisions of section 12 of the ordinance of 1926 recite that the railway company had surrendered any and all franchise terms in excess of the present constitutional limit of 20 years from August 25, 1922, by its formal acceptance of the provisions of the ordinance of August 25, 1922, and that the surrender of the terms of such franchises also conformed to the provision that all franchises should expire at the end of 20 years from August 25, 1922, but without prejudice to the right of the railway company with the assent or approval of the board of public works to continue its plan of financing as defined by said section of that ordinance.

Appellants argue that the city had no power to withdraw or amend the franchise of the railway company, and that what was done by the two ordinances had the effect of withdrawing the franchises in so far as it reduced the number of years which they were to run, and that they were to that extent amended by the ordinances. They rely on the case of L. & N. R. Co. v. Bowling Green Railway Co., 110 Ky. 788, 63 S. W. 4. That was a case where the ordinance attempted to take from the railway company rights that it possessed under the terms of its franchise without the consent of the railway company. The court properly held that the city of Bowling Green could not interefere with the franchise rights of the company which had been granted by legislative enactment prior to the adoption of the present Constitution. The case, therefore, has no application to the present case, as the railway company is here voluntarily surrendering a part of the term of its franchises.

They also rely on the case of City of Louisville v. Cumberland Telephone & Telegraph Co., 224 U. S. 649, 32 S. Ct. 572, 56 L. Ed. 934. The facts in that case were that the Legislature in 1886 (Acts 1885-86, c. 511) had granted a franchise to the Ohio Valley Telephone Company, giving it the right to operate and maintain a telephone and telegraph system in the city of Louisville, but before it might do so it was necessary to have the consent of the city council. The city council gave its consent, and thereafter undertook to withdraw it; but the court held that having once given its consent, the franchise granted by the Legislature became effective, and that the city could not withdraw its consent, and could not repeal, nullify, or forfeit it by ordinance the franchise granted by the state Legislature. That case is not in point, as the city of Louisville, by the ordinances mentioned, is making no attempt to repeal, nullify, or forfeit any franchise now held by the Louisville Street Railway Company over the objection and protest of that company.

It is next urged by appellants that there is no general law of the state which confers upon the city the power to withdraw or amend a franchise granted by the Legislature, and they cite the case of Slade et al. v. City of Lexington, 141 Ky. 214, 132 S. W. 404, 32 L. R. A. (N. S.) 201. It was there held that the charter of a corporation constitutes a contract between it and the state, which the state cannot impair by subsequent legislation. But it was held that under the provisions of the act of 1856 (Ky. Stats., sec. 1987) all charters and grants to corporations were accepted by them subject to the provision in that act that they might be amended or repealed at the will of the Legislature, unless a contrary intent was plainly expressed. If it be true that a legislative enactment granting a charter, or a franchise, constitutes a contract between the state and the corporation receiving the grant, it follows, as a matter of course, that one of the parties, without the consent of the other, may not violate the provisions of the charter or franchise. If it is a contract, however, the parties may modify it or change it by mutual consent, and that is what is attempted by the two ordinances under consideration. The city of Louisville is but a branch of the state government, and it has been given authority by the provisions of its charter, found in section 2742 et seq. Ky. Stats., to govern itself by such ordinances and reso-

lutions for municipal purposes as it may deem proper, not to conflict with the provisions of its charter, nor the Constitution and laws of this state or the United States. The operation of a street railway company within a city is largely, if not wholly, a municipal matter.

They contend that the railway company is without authority to relinquish or surrender to the city the franchise obtained from the state. The appellants are not representing the Louisville Railway Company, and they are, therefore, in no position to complain if the railway company surrenders to the city valuable rights which it obtained from the state. It seems to be contended that this may not be done, because the rights were obtained from the state; but the state, by the provisions of section 164 of the Constitution, vests these rights in the city. Moreover, it is not contended that the railway company is surrendering these rights to the prejudice of the inhabitants of the city. The question is not over the power of a railway company to surrender its charter over the protest and objections of the city and to the detriment of the inhabitants thereof.

They contend that the city and the railway company cannot agree to abolish the franchise granted by the state. There is no provision for the abolishment of the franchise found in the ordinances, but there is an agreement as to the modification of the franchises, relating to the term for which they shall run. It has been said by the courts so many times that repetition is unnecessary that a franchise granted by the state constitutes a contract between the state and the one receiving the franchise. If it be a contract, and if the rights of the state have been vested in the city of Louisville by the provisions of the Constitution and the laws enacted pursuant thereto, we do not know any law that takes such a contract out of the general rule that it is subject to modification by the consent of all parties who are interested. They contend that the ordinance grants a new franchise, and that such franchise is without consideration. The provisions of the ordinances for the adjustment of the franchises is not the granting of a new franchise to the Louisville Railway Company. Particularly the ordinance of 1922 set out that no right was granted to the railway company to operate or maintain a street railway at points where it was not at the time so doing.

They insist that the city has no power to release the railway company of any duty or liability to the citi-

zens, imposed on the company by its franchise. The general council represents the inhabitants of the city in their corporate capacity, and it may be that through proper ordinance and with the consent of the holder of the franchise all rights might be terminated; but we do not so hold at this time, as the question is not before us. The franchises are to continue for a period of 20 years under the provisions of the ordinances, and there will be time to raise this question at the expiration of that period, if the necessity therefor should exist or arise.

They contend that the conditions precedent required by the law for the granting of a new franchise by the city did not exist at the time of the passage of the ordinances. They rely on section 3037d1, Ky. Stats. The section has no application. There is no intention expressed in the ordinances to grant a new franchise, and for that reason it was not necessary to follow the provisions of that section of the statutes.

Another major ground relied on by appellants is that the attempted abrogation by the city of the franchise of the railway company is an attempt to repeal the Constitution and statutes by nullification. This seems to be an attack upon the political organization and government of the city of Louisville, which has not been raised by the pleadings, and probably could not be so raised. This court has no control over the general council of the city of Louisville. If it enacts an ordinance without the authority so to do, or without following controlling laws in such matters, this court may declare such an ordinance invalid. But we fail to find in the ordinances attacked any effort on the part of the general council to repeal the Constitution and statutes made pursuant thereto by nullification.

Again, they set up a major ground of attack, which is that a new franchise was granted by the ordinances. We have said that we do not find that the ordinances granted any new franchise. They cite that provision of the ordinance which gives the city of Louisville the right to purchase, and that, if such right is not exercised, a second franchise shall be sold, under which the railway company, if it becomes a purchaser, may continue to operate its street railway system for another period of 20 years. The ordinance only recites what would have happened if the ordinance had not so provided. It is not an attempt to grant another franchise, beginning at the

expiration of the 20-year period. It is not necessary to sell a franchise 20 years in advance, and no attempt is made by the ordinance for the sale of another franchise. It follows, as a matter of course, that the city will have the right to sell a franchise when the existing franchise expires, if the city deems it necessary to do so, and when it is sold all the requirements of the Constitution and the laws will have to be followed. We find no merit in the contention that a new franchise had been granted, either beginning at the time of the enactment of the ordinances or 20 years thereafter.

We come now to another division of the brief of appellants, which relates to the rate of fare provisions in the ordinances. It is first argued, under this division of the brief, that the ordinances usurp the functions of the general council, because they deprive the general council of legislative power to fix and determine rates. Section 5 of the ordinance of 1926 is the subject of the most serious attack by appellants. It begins by providing that changes in rates initiated by the general council shall be made only after reasonable notice to the company and a full and fair hearing. It provides that the board of public works shall obtain data touching the value of the property of the company, which shall be submitted to the general council for its full information and advice in fixing rates. These provisions are followed by another to the effect that, when the company desires a change in rate, it may file the proposed change with the general council for its consideration and shall at the same time file a copy of the proposed change with the board of public works, and shall leave same on file for 60 days. If within the 60-day period the rate shall have been approved, or shall not have been acted on by the general council in whole or in part, the whole, or part so approved, or so not acted upon, shall take effect as proposed. The general council is given the power by resolution passed within 60 days to extend the time for any period fixed by it, not exceeding 90 additional days. The general counncil shall neither disapprove nor modify the proposal of the company without according it a full and fair hearing. Then follows the concluding provision of the section, which is that rates established under the operation of the ordinance shall be effective until thereafter rescinded or modified by the general council, or otherwise changed as therein provided, or enjoined or set aside by a court of competent jurisdiction.

It is true, as held in the case of Louisville City Railway Co. v. City of Louisville, 71 Ky. (8 Bush) 415, that a city council does not have the power to limit its legislative discretion by covenant. As we read the ordinance, it does not deny the general council any power that it has to regulate rates by ordinance. The power to do so is specifically reserved. For these reasons, the cases cited by appellants are not in point.

That the ordinances violate the provisions of section 179 of the Constitution of Kentucky is another contention made by appellants. This argument on their part is based upon the provision of the ordinances which forbids the issuance of securities by the railway company without the approval of the board of public works. It is claimed by them that the right of the railway company to obtain new money, or to issue new securities, cannot be given or withheld by the city. That is a question of no concern to appellants. If a burden is placed on the railway company by the ordinances, it alone may complain. But it is argued that the ordinance has the effect of placing the credit of the city behind any securities which may be issued by the railway company, or that the effect of the ordinances is to loan the credit of the city to the railway company. Section 179 of the Constitution of Kentucky forbids the city from loaning its credit to, or becoming a stockholder in, any corporation. The fact that the ordinances require the city to give its assent to the issuance of any securities by the railway company does not make it a guarantor of such securities. The general council is vested with power to fix rates, and the fixing of rates involves a determination of invested capital, and it may be that these provisions of the ordinances are to enable the city to keep a line on the amount of invested capital, as well as the necessity for its investment. That the ordinances contain no language which would justify a construction that the city is lending its credit to the railway company is obvious; but, if there should be any doubt on this point, the ordinances remove all doubt by the provision that:

"Nothing herein contained shall be understood or construed as lending the credit of the city to said railway company."

Appellants contend that the arbitration clause in the ordinance of 1922 constitutes a surrender of legisla-

tive authority by the city of Louisville, and is therefore void. Arbitration has always been favored by the courts. It is provided that, when the railway company engages in operating practices not approved by the board of public works, the dispute shall be submitted to arbitration; that a disagreement over the question of operation costs, as affecting fares, shall be submitted to arbitration; that a disagreement over the proper rate of amortization shall be submitted to arbitration; that a disagreement over the expenditures for capital account and funds otherwise available for dividends or amortization accruals shall be submitted to arbitration; that any disagreement over the proper construction of the ordinances shall be submitted to arbitration. It is thus seen that, in the main, arbitration must be resorted to as a fact-finding procedure. We fail to find any authority which would render such provisions of these ordinances illegal.

Another point urged against the ordinances is that they impose upon the board of public works powers which are not granted by the city charter. The ordinances provide that said board shall have regulatory powers over the operation of the railway company, and the powers go no further than to confer administrative duties on that board. In the case of City of Mayfield v. Phipps, 203 Ky. 532, 263 S. W. 37, this court approved the action of the council of the city of Mayfield in placing the management of the municipally-owned water and light plant in a committee created by the city council. It was there held that powers of a purely ministerial, administrative, or executive nature might be delegated by a municipal council to a committee, or to an appropriate officer. It is true that a city cannot delegate to such committee or officer the power to decide upon legislative matters properly resting in the judgment and discretion of the council. The ordinances in question do not delegate to the board of public works the power to decide upon legislative matters that rests in the judgment and discretion of the general council.

The contention made by appellants that the effect of the second ordinance was to repeal the whole of the first ordinance, because it did not set out in full and reenact those parts of the first ordinance which were to remain in force, as is required by section 2777 Ky. Stats., was disallowed in the case of Gathright v. Byllesby & Co., 154 Ky. 106, 157 S. W. 45.

Having given careful consideration to the various points urged against the validity of these ordinances by appellants, we have reached the conclusion that none of the points can be sustained, and that the general demurrer to the petition was properly sustained by the chancellor.

Judgment affirmed.

Whole court sitting except Judge Dietzman.