## Clay et al. v. Catlettsburg, Kenova & Ceredo Water Co.

Jan. 29, 1946.

Davis M. Howerton for appellants.

Martin & Smith and LeWright Browning for appellee.

OPINION OF THE COURT BY MORRIS, COMMISIONER—Reversing.

Ella C. Clay and Marie Newman owned a residence in Catlettsburg which was totally destroyed by fire on September 12, 1939. Thereafter they sought to recover of appellee its alleged value, $6500, on the ground that it had failed to furnish an adequate supply of water to have saved their house from destruction. The court sustained demurrer to the petition, and appellants amended by filing a substituted petition with amplifications. The original did not embrace the entire ordinance under which appellee, or its predecessor had been granted franchise; the amendment set it out in full.

As to their cause appellants charged that notwithstanding the fire department responded to an alarm promptly, properly manned and equipped to have prevented the destruction, the supply of water was inadequate. The court sustained demurrer to the petition as amended on an excerpt from the case of Board of Education of Somerset v. Kentucky Utilities Co., 231 Ky. 484, 21 S. W. 2d 817, on the ground that the original franchise granted January 18, 1891, for a period of thirty years had expired, and that under the provisions of sec. 164 Constitution a franchise may not be renewed or extended by agreement, expressed or implied, but only in the manner specifically provided.

The potent part of the pleading, following statements of facts, the incorporation of the ordinance, and the prompt response of the fire department, is the allegation undertaking to fix liability on appellee, "that defendant negligently, wrongfully breached the covenants of said ordinance and franchise, in that it failed to establish or maintain a pressure in the water mains near to plaintiff's building of 75 pounds per square inch, and negligently and wrongfully breached its franchise and ordinance in that it failed to furnish a supply of water pressure sufficient under usual and ordinary circumstances such as there obtained to have prevented the fire from destroying their building, and that as a direct and proximate result of such neglect and wrongful acts, said fire was caused to reach and destroy their building to their damage &c."

Certain sections of the ordinance provided for the installation of 40 fire hydrants, located as per ordinance, the city to pay an annual rental of $1475 for the furnishing of water therein specified to all public hydrants.

Section 15 provides that the storage or distributing waterhead should be a reservoir of sufficient capacity to supply water as provided in the ordinance. A portion of sec. 16 reads: "Pressure in mains shall be 75 pounds per square inch continuously or more, and if said pressure be below 75 pounds for any four successive weeks, hydrant rentals to cease until restored to 75 pounds pressure per square inch, which grantees or assigns shall do without necessary delay."

We shall dispose of the contention of appellant to the effect that disregarding the franchise, and irrespective of its expiration, the appellee was liable for damages under the common law. The argument is based on the admitted fact that appellee continued to operate to the time of the fire, without interruption, rendering the same service provided for in the ordinance, collecting for its service from the city and citizens, hence it was appellee's duty to exercise ordinary care to furnish sufficient pressure to extinguish fires. This contention may be fully answered by reference to Buford & Co. v. Glasgow Water Co., 223 Ky. 54, 2 S. W. 2d 1027, 62 A. L. R. 1195; Tobin v. Frankfort Water Co., 158 Ky. 348, 164 S. W. 956; and Mountain Water Co. v. Davis, 195 Ky. 193, 241 S. W. 801; Atlas Finishing Co. v. Hackensack Water Co., 163 A. 20, 10 N. J. Misc. 1197; Baum v. Somerville Water Co., 84 N. J. L. 611, 87 A. 140, 46 L. R. A., N. S., 966. By reference to Kentucky Utilities Co. v. Farmers' Co-op Stock Yards Co., 246 Ky. 40, 54 S. W. 2d 364, it will be noted that our court is in the minority in holding to the rule that a water company is liable for loss resulting from failure to perform its contract to furnish water for fire protection, following the rule laid down in Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky. 340, 12 S. W. 554, 13 S. W. 249, 76 L. R. A. 77, 25 Am. St. Rep. 536. While adhering to the minority rule, we are not prepared to carry it to the extent of holding the company liable for a common law tort.

The petition shows that the original franchise was granted in January 1891, for a period of thirty years, hence expired in January of 1921, without renewal. It is vigorously argued by appellee that our holding in the Somerset-Utilities case, supra, is conclusive. In that case it was shown that the Utilities water franchise had ex-

pired in September of 1921. The board had sued the water company to recover a sum paid under protest to the company on the ground that under the terms of its contract it, the company, was to supply water to schools without charge. The allegations were as here; the company had continued to operate its works under terms and conditions of its franchise, charging the same rates to the city and the public, and further that the free service to the schools was a part of the consideration of the contract.

This operation had continued until January 1928 when the Utility Company threatened to stop the school service unless it was paid $1,327.53 claimed to be due. This was paid under protest, and a suit was filed to recover, and demurrer was sustained to the petition. We conceded, without deciding, that the petition sufficiently alleged an agreement to carry on the service after the expiration of the franchise, and held that such an agreement "would have no binding effect whatsoever, as it would clearly contravene sections 163 and 164 of the Constitution" [231 Ky. 484, 21 S. W. 2d 818], which provides that franchise rights shall only be acquired through the purchase of a franchise. We said that after the expiration of the franchise the company had only the right to remove the property within a reasonable time, and we may add, or apply for a new franchise, and since 1926 (Acts 1926, Ch. 137, KRS 96.010) could have compelled the city to provide for its sale. Kentucky Utilities Co. v. City of Paris, 297 Ky. 440, 179 S. W. 2d 676. The Somerset case was referred to in City of Ludlow v. Union L., H. & P. Co., 231 Ky. 813, 22 S. W. 2d 909, re-affirming the principle.

Appellant, to meet the arguments of appellee, takes the position, first, that since the appellee's franchise was granted prior to the adoption of the present Constitution, sec. 164, limiting the life of a franchise, does not apply, under authority of Louisville & N. R. Co. v. Bowling Green, 110 Ky. 788, 63 S. W. 4; and Slade v. City of Lexington, 141 Ky. 214, 132 S. W. 404, 32 L. R. A., N. S., 201, cited in Ashland Waterworks Co., 6 Cir., 251 F. 492, 498, which clearly holds that as to contracting parties, rights had vested.

We deem it unnecessary to determine whether the

failure to purchase had the effect of continuing the franchise with the same respective rights and obligations of the parties, or to determine whether the language of the ordinance limited the duty of the company to furnish less than an adequate supply of water, or none at all, with the right to collect rentals as it had been doing, a construction adopted by the contracting parties, one of whom continued to control and operate its plant "upon the same plan and in the same manner, continuing to supply water, mains and hydrants as a means of fire protection to citizens," collecting the same rentals for hydrants.

Counsel for appellee places emphasis on that portion of the Somerset-Utilities case, supra, which says that the Company, after the expiration of its franchise had "only the right to remove its property within a reasonable time." A reading will show that notwithstanding it had that right, it still had not only other rights but duties. It had the right to collect a reasonable sum for water furnished, and it was the city's duty to pay, and we said; citing Union L., H. & P. Co. v. Fort Thomas, 215 Ky. 384, 285 S. W. 228, "So long as the company continued the service it could have been required to render it fairly and without discrimination," but not without compensation, and "the board paid the accrued water bills in order to have the service continued."

The original contract was made by the city for the benefit of its citizens, and while it may be that the company since the expiration of its charter could not have been required to furnish at all times a pressure of 75 pounds per square inch of the mains, it was to say the least required to furnish a reasonably adequate supply for the protection of the property of the citizens for whose benefit the contract was originally made. The continuation of the service and the collection of rentals upon the same terms and conditions as originally provided, would imply an obligation on the company to furnish a supply of water pressure "sufficient under usual and ordinary circumstances" to have prevented the spread of the fire and destruction of the building, an implication in law, and perhaps in fact.

We are not without authority to support the proposition that these rights and duties exist by legal implica-

tion, after expiration of a franchise, where the utility elects to continue to supply service and receive pay, and the beneficiary has certain reciprocal rights, duties and obligations. In Iowa City v. Iowa City L. & P. Co., 8 Cir., 90 F. 2d 679, 682, 112 A. L. R. 618, in dealing with this subject the court said:

"It is well settled that a public service utility operating under a city franchise is not released from its duty * * * at the moment its franchise runs out. Where the city inhabitants have become dependent upon the service and no other arrangements have been made to supply it, the obligation to serve remains on the utility whose properties still occupy the streets and public places. * * * The reciprocal duties which result from necessity when the term of the franchise expires are no less certain because the conditions are of indefinite duration. While they continue, the utility must keep the service up and the city must require the rates to be reasonable. It follows that the utility must continue to use its best effort to render the service efficiently and economically, and a reasonable choice of means remains with the company."

There are appended to the case above mentioned, numerous notes, among them several under the heading, "Rights growing out of and effect of Continuation." Among these is Denver v. Denver Union Water Co., 246 U. S. 178, 38 S. Ct. 278, 282, 62 L. Ed. 649. Without going into details, it appears that the utilities ten year franchise had expired in 1910. There had been extended litigation to determine whether the city was compelled to exercise its option to purchase, or might build its own plant. In 1914 the city passed an ordinance undertaking to require the utility to reduce rates. The court there held that the act of undertaking to regulate rates was a recognition that the plant must continue "as before, to serve the public." The ordinance was construed as a grant of a new franchise, terminable either by the city or by the company at such time and under such circumstances as "may be consistent with the duty that both owed to the inhabitants of Denver. It recognizes the dependence of the city upon this plant, by necessary implication confers upon the company whatever privileges may be necessary to enable it to continue serving the public, in effect requires it to furnish water * * *." To the same effect are noted,

Hill v. Elizabeth City, 4 Cir., 298 F. 67, followed in Elizabeth City Water & Power Co. v. Elizabeth City, 4 Cir., 298 F. 70. In those cases the holding was that after expiration of water franchise, the company continuing to supply service, an implied contract of indefinite duration arose, terminable upon reasonable notice at such time and under such circumstances as would be consistent with the duty owed to the inhabitants of the city.

In Bowers v. Kansas City Public Service Co., 328 Mo. 770, 41 S. W. 2d 810, where the company's franchise had expired, but it continued to operate by receiver, it was held that since the continuation was under the terms and conditions of the original ordinance, the company was bound under the franchise provisions to keep its property in good condition, it could not escape liability for personal injuries due to failure to keep a bridge in repair, on the ground that its franchise had expired.

The principles laid down in the cases cited are sound. By argument of counsel for appellee we are asked to hold that under the conditions existing, the company was not under any duty to supply adequate water service for the control of fires, but might collect the fixed rentals for public hydrants. The ordinance required the city to pay $1475 for public hydrants, perhaps one of the most important of the company's rights and privileges. Certainly an extension of the company's rights and privileges must extend correlative duties, and the city would not have intended to deprive itself during the extended term of the right to have fire protection. Ashland Waterworks Co. v. Ashland, 251 F. 495; Union Light, H. & P. Co. v. Fort Thomas, 215 Ky. 384, 285 S. W. 228.

In Humphreys v. Central Kentucky Natural Gas Co., 190 Ky. 733, 229 S. W. 117, 120, 21 A. L. R. 664, a citizen sued for injury to his property because of an insufficient supply of gas for heating purposes. We found that the franchise did not provide for any quantity or pressure furnished to the consumer. Notwithstanding this we held that the law will imply a contract, and "when the law raises, in a case like this, an implied contract, any inhabitant of the city will have the right to maintain an action in his own name for a breach of it to the same full extent that he might maintain an action for a breach of an express contract. * * *

No distinction can be drawn between the duty of the company to perform the obligation put on it by an implied contract and its duties and obligations under an express contract.'' The court said that there may be a difference in the quality of duties. ''In the case of an express contract the terms and conditions of the contract itself must be looked to, while in the case of an implied contract the conditions to be performed would be only those that in reason and justice the company should perform in carrying out the purposes for which the privilege to it was granted. * * * To require a less measure of duty * * * would be unjust to the city and its people, and enable the gas company to defeat the very purpose that induced the city to grant the privilege of using and occupying its streets. * * * It would also be subject to great inconvenience.'' This case is cited with approval in Warfield N. Gas Co. v. Allen, 248 Ky. 646, 59 S. W. 2d 534, 91 A. L. R. 890. Under these authorities there is no escape from the conclusion that appellees are entitled to recover if the company failed to furnish a supply of water pressure sufficient ''under usual and ordinary circumstances as then and there obtained, to have prevented the spread of the fire,'' as it is plead in the petition.

For reasons stated the judgment is reversed for consistent proceedings.