## Union Light, Heat and Power Company v. City of Fort Thomas, et al.

(Decided June 25, 1926.)

### Appeal from Campbell Circuit Court.

1. Gas—Gas Company, Without Franchise, or Continuing Supply After Expiration of Franchise, Must do so Under Reasonable Rates and Conditions which May be Enforced by Courts of Equity.— A gas company, distributing and selling gas within city without franchise, or continuing in city after expiration of franchise, must do so under reasonable rates, terms, and conditions, and courts of equity may be applied to in order to prevent imposition of excessive rates or unreasonable and unjust rules.

2. Municipal Corporations.—City or town can consent to occupancy of its streets by public utility only as provided by Constitution, section 164.

3. Constitutional Law.—"Franchise" is a contract between city and public utility company, binding on each, and cannot be impaired either by Legislature or court, in view of prohibition of impairment of obligation of contracts contained in United States Constitution.

4. Gas—Gas Company Held Entitled to Withdraw from City After Expiration of Franchise, having Given Notice in Accordance with

Terms Thereof (Constitution, sections 163, 164).—Under franchise providing that, on expiration of a 10-year term, gas company could withdraw from city, gas company was entitled on expiration and on giving of required notice to withdraw, over objection of city and inhabitants, particularly in view of Constitution, sections 163, 164, relative to municipal franchises.

5. Gas—Service Continued by Gas Company After Expiration of Franchise Under Court's Mandatory Orders Held Not Continuing Service Without New Franchise, Requiring Commission's Permission to Withdraw (Ky. Stats., section 201e-23).—Service continued by gas company after expiration of franchise under mandatory orders of court and over protest and against objection of company held not continuing service without obtaining new franchise, so as to bring it within operation of Ky. Stats., section 201e-23, requiring permission of Railroad Commission to withdraw.

MATT HEROLD for appellant.

BRENT SPENCE, JOHN D. CARROLL and FRANK E. DAUGHERTY for appellees.

GRANT E. LILLY, J. A. EDGE and ROBT. H. WINN, amici curiae.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

The judgment from which this appeal is prosecuted enjoined the appellant gas company "from turning off, or in any manner interfering with the gas supply of the city of Fort Thomas, its inhabitants and consumers." The correctness of that judgment is questioned by this appeal. Appellant company distributes and sells gas through its mains and pipes in the city of Fort Thomas to the municipality and other consumers. The franchise under which it began to operate was granted by the city in 1915 for a term of ten years. It expired by its terms at midnight September 5, 1925. Before that time the city advertised a gas franchise for sale and appellant made a written proposition of purchase upon a higher level of prices for gas to the consumer. Conceiving the prices to be unreasonable the city council declined the bid and did not sell the franchise. The gas company, on August 5th, gave thirty days' written notice to the city through the mayor and city clerk of its purpose to discontinue the supply of gas to the city and its inhabitants at midnight September 5th, the time of the expiration of the franchise, and also advertised the fact in the Kentucky edition of the Cincinnati Enquirer and the Kentucky edi-

tion of the Times Star, two newspapers of general circulation in the city of Fort Thomas at that time. On the afternoon of September 5th this action was instituted in Campbell circuit court, and a temporary restraining order issued by the clerk, enjoining appellant company and its agents from turning off the gas that night or at all until the court could hear the case. In obedience to the order of the court appellant, under protest, continued to supply gas to the city and its inhabitants just as it had done under the franchise, not even taking advantage of the advanced rate allowed by the court under the impounding provision of the order later made. It moved the judge of the Campbell circuit court to set aside the restraining order, and on hearing this motion was overruled, whereupon it applied to a judge of this court for a dissolution of the injunctive order. The motion was heard by Chief Justice Clarke and Judges Thomas, Dietzman and Settle, and overruled on the ground "that in view of the great importance to the parties litigant and the public of the main question involved in the action, the temporary injunction should remain in force until the case shall have been determined upon its merits in the Campbell circuit court. Moreover, as the order of the circuit judge granting the injunction will fully preserve the status of the parties and their rights as they existed before the institution of the action, the continuance of the injunction until the final judgment of the circuit court may be rendered, will result in no injury to any of them."

The case was then prepared upon its merits. In the meantime a proceeding was also instituted before the State Railroad Commission by the city of Fort Thomas against the gas company, praying that body to take jurisdiction of the controversy under section 201e-1, Kentucky Statutes, and to make such orders as appeared necessary in the premises, directing and commanding the gas company to continue to furnish gas to the city and its inhabitants, and that the commission require the gas company to fix reasonable rates and prices for gas. The gas company filed a protest with the railroad commission in answer to the complaint, and the commission made an order overruling the demurrer of the gas company to the proceeding before the commission, assumed jurisdicdiction, and directed the company to continue to furnish gas to the city and its inhabitants and to install and extend service pipes and otherwise carry on the business of

supplying gas in and to the city and its consumers. A copy of all the record of the proceeding before the State Railroad Commission is made part of the record in this case, that proceeding being instituted in pursuance to an act of March 22, 1920, now section 201e-1, Kentucky Statutes, the validity of which act is now also called into question.

This suit was originally instituted upon the theory that the gas company, being a public service corporation and having exercised the right of laying its mains and pipes in the streets of the city and of distributing and selling gas to the city and its inhabitants for ten years, was without right even on the termination of its franchise, to withdraw from business in the city and cease to supply gas as before. In argument counsel for the city assert that under modern conditions of life many of the daily necessities such as light, heat and water can be acquired only through the great public service corporations, many of which are monopolistic in their scope and power, and that it is not only within the powers and rights of government to regulate and control such companies but the highest duty of government to do so; that when such company receives its exclusive franchise and installs its mains and pipes in the streets of the city it thus cuts off competition and obtains a monoply and it is charged with the duty of supplying the city and its inhabitants with the commodity which it alone can furnish, and when its franchise expires it alone can and will bid for a continuance thereof, because no other concern can compete with it, in as much as it has its equipment already installed, and thus such concerns obtain a masterful control over the situation and obtain an advantage which puts the municipality and its inhabitants at its mercy. Several cases are cited and relied upon as authorizing and empowering municipalities, situated as appellee, Ft. Thomas, to require a gas company having plants in a city to continue to supply gas to the munici pality and its inhabitants after the expiration of the contract, because the company had, in a sense at least, a monopoly upon the supply of gas, owning the mains and pipes under the surface of the street and must supply the commodity which no other concern can supply on equal terms, and not turn the city and its people back to antiquated methods of oil lights and coal ranges. A special reliance is had upon the unreported opinion of

Judge Hickenlooper of the federal district court, delivered in the case of United Fuel & Gas Co. v. Railroad Commission of Kentucky, in which it was said:

> "One of the recognized duties of the public utility being to serve all who apply, such companies are not only subject to legislative regulation in this respect, N. & W. Ry. Co. v. Public Service Commission of West Virginia, 265 U. S. 70, 74, but this common-law duty can be enforced by a court of equity. . . . The mere fact that the franchise in the various cities have expired does not make the continuance of this business illegal, for, under section 23 of the Railroad Commission Act, the enterprise is now to be considered a state venture, and not a municipal one. The state is the unit and not the municipality. There is no obligation to continue in the state, but if they do continue in the state they are subject to their common-law and statutory duties in all parts of the state, county, township and municipality. This would not only seem to be the result of recent legislation, but also to be the trend of judicial view in Kentucky and elsewhere. See Southern Railway Company in Kentucky v. Hachett, 174 Ky. 463; North Carolina Public Service Co. v. Southern Power Co., 282 Fed. 837, 844; Missouri Pacific Ry. Co. v. Kansas, 216 U. S. 262, 277; and Pennsylvania v. West Virginia, 262 U. S. 553; also Gas Co. v. McCall, 245 U. S. 345."

There is no authority to the effect that, where the franchise is silent as to its duration, such franchise is not perpetual but indeterminate, at the will of the parties, says 28 C. J., page 557. Where, however, the gas company forfeits or loses its right to exercise the privilege of distributing and selling gas within a city, it may withdraw therefrom, removing all of its equipment although the city and its inhabitants may not consent thereto, but, on the contrary, are anxious to have the gas company continue to supply gas to the city. East Ohio Gas Company v. Akron, 81 Ohio State 33, 90 N. E. 40, 26 L. R. A. (N. S.) 93. In that case it was definitely held that when a municipal corporation, by ordinance. gives its consent that a natural gas company may enter the municipality, lay down its pipes therein, and furnish gas to consumers upon terms and conditions imposed by the ordinances, which are accepted in writting by the company, such

actions by both parties constitute a contract, and the rights of the parties thereunder are to be determined by the contract itself. And that where the contract between a municipal corporation and an incorporated company is silent as to the duration of the franchise, such franchise is not perpetual, but the duration thereof is simply indeterminate, existing only so long as the parties mutually agree thereto. The incorporated company may, therefore, voluntarily forfeit its right to exercise its privileges within the municipality, and wholly withdraw therefrom, but in such case the municipality has no right to prevent the incorporated company from removing its property, nor take possession of and make use of the same, nor to grant the right to use the same to another company, without due process of law; but so long as such gas company continues to exercise any of its franchise within the contracting municipality, it may be compelled to exercise its franchise therein fairly and without discrimination.

While there is authority sustaining the views expressed by Judge Hickenlooper, no case can be cited, we think, in which a gas company was required to continue to supply gas to a city and other consumers after the expiration of its franchise where it was expressly provided in the franchise under which it entered the city to supply gas that it should have the privilege at the expiration of the franchise, by giving thirty days' notice of its intention, to cease to supply gas and to withdraw from the city, that it could not do so on complying with the terms of the contract. Even without such provisions in the contract, why should a gas company be required against its will to sell its product to the city and its inhabitants after the expiration of its franchise, and after it has fully complied with all the terms and conditions thereof? Cases may arise where the facts and circumstances would warrant the interposition of courts of equity to prevent the discontinuance of gas service to the city even after the expiration of the franchise, but that is not the kind of case here presented. Of course, if a gas company enters a city without a franchise and begins to distribute and sell gas, or continues in the city after its franchise has expired, and distributes and sells gas, its rates, terms and conditions must be reasonable, and courts of equity may be applied to to prevent the imposition of excessive rates or unreasonable and unjust rules, and, under cer-

tain conditions, the discontinuance of the services. In the instant case the gas company defended upon the theory that the petitioners sought to take its property without due process of law, and in violation of the Fourteenth Amendment of the Federal Constitution, a palpable impairment of contract. In its answer it set forth certain parts of the franchise contract, and especially pleaded and relied upon section 12 thereof, reading:

> "At and after the expiration of the said ten (10) years' period from acceptance of a bid under this ordinance the successful bidder may at his or its option discontinue the supply of natural gas within the said town and may then remove its pipes and mains from the streets, lanes, alleys and public grounds thereof, upon thirty (30) days' notice of his or its intention so to do, and thereupon its right within the said town to supply natural gas shall cease and terminate absolutely. And the town of Fort Thomas may, at its option, at any time at or after the expiration of the ten (10) year period, upon thirty days' written notice to the successful bidder, terminate all the rights and privileges conferred upon the successful bidder by this grant and require the successful bidder, his or its successors or assigns to remove its pipes and mains from the streets, lanes, alleys and public grounds of said city."

In addition to its argument that the act of 1920 empowering the railroad commission to fix rates for gas companies conflicts with various provisions of the Constitution, the gas company insists that as its franchise contract expired on September 5, 1925, and it had no further right in the streets of the city or to supply or sell gas, it should have been permitted to withdraw from the city, in accordance with the terms of section 12 of the franchise contract to which we have referred, and it insists that it has no right and is under no duty to occupy the city streets for the supply of natural gas to the city or its inhabitants, and, further, that the city could not grant the gas company and the gas company could not acquire any rights in the streets after the expiration of the franchise without complying with section 164 of the Constitution, in part reading:

"No . . . city . . . shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years . . . and before granting such franchise . . . such municipality shall first, after due advertisement, receive bids therefor, publicly, and award the same to the highest and best bidder."

Section 163 of the Constitution expressly prohibits gas and other public utility companies in a city from constructing or laying pipes or mains along, over or under the streets and public ways thereof without the consent of the legislative bodies of the city. We have repeatedly held that a city or town can consent to the occupancy of its streets by a public utility only in the manner pointed out by section 164 of the Constitution. Alberdshart v. Donaldson, 149 Ky. 510; Bland v. Cumberland Telegraph and Telephone Company, 33 Ky. Law Rep. 399; Rural Home Telephone Company v. Kentucky-Indiana Telephone Co., 128 Ky. 209.

A franchise is but a contract between the city and the gas company, binding upon each and cannot be impaired either by legislation or the court. No state shall pass any law, says the Constitution of the United States, impairing the obligation of contract. The writing relied on by the gas company in this case specifically authorized either party to conclude the arrangement at the end of the ten-year period by giving thirty days' notice to the opposite party so that such party might not be taken unaware. After some negotiations looking to the granting of a new franchise the gas company decided to withdraw from the city and accordingly gave notice to the city and its inhabitants thirty days before the expiration of the franchise that it would cease to furnish gas after midnight on September 5, 1925. This was in exact accordance with the terms of the contract between the parties. In the first place the gas company had only the right to remain in the streets and to supply gas to the city and its inhabitants for a term of ten years, and no longer. The city could only contract with the gas company by ordinance and franchise duly enacted and entered into. City of Princeton v. Princeton Light Company, 166 Ky. 730. The gas company had no right to continue in the streets of the city after the expiration of the franchise, and the city had no right to make a con-

tract with the gas company to supply gas except by franchise duly authorized by ordinance. Such contracts stand upon the same footing as other contracts, even those between individuals, to the extent that neither party may with impunity violate the terms thereof, nor is either party entitled to require the other party to the contract to do anything not therein specifically provided for or resulting from necessary implication.

The parties to the franchise in question were competent to contract and were authorized to make the kind of contract which they made and which is evidenced by the franchise, and cannot be compelled to do anything under the contract which is not reasonably included within its terms. Certainly there is no word in the franchise indicating that the gas company could without further grant from the city remain in the streets and continue to supply gas to the city after the end of ten years. Nor does it claim such right. It could not compel the city to allow it to continue in the streets and to sell it gas by showing that it had no other market for its product or that it could not exist except for the market that the city and its inhabitants afforded, and that its plant, consisting of machinery, mains, pipes and pumps, would become worthless if it were compelled to give up its relations with the city. The thirty days' notice provided for in the franchise was intended to afford each party reasonable opportunity to adjust itself to changed conditions, if such changes were to take place. Natural gas, while desirable, is not the only mode of heating and lighting, and not therefore absolutely necessary but only convenient, and a municipality and its inhabitants cannot, by granting a ten-year franchise to a gas company, acquire an inalienable right to have the gas company continue to furnish gas after the contract has expired, especially when the contract upon which the city and its inhabitants rely for such equitable relief, if equitable it may called, provides that either party, by giving thirty days' notice, may discontinue the arrangement at the end of the franchise period. While it may be inconvenient for the inhabitants of a municipality and the municipality to be cut off from the supply of natural gas, it would be very much more to the disadvantage of such municipality and citizens to have it declared by the courts that they could not make a binding contract, protecting them and each of them from burdens which arise from changed conditions not contemplated by the

contracting parties. Manifestly, the city of Ft. Thomas and its inhabitants had no inherent right to have and take a supply of the natural gas from appellant company for all time, simply because of the franchise granted in 1915 for a period of ten years. Had no franchise been granted in 1915, and up until this time, it would not be within the realm of equitable jurisdiction to compel the gas company against its will to enter a city and supply it with gas. The gas is its merchandise and it has the right in the absence of exclusive contracts to sell it in any market which suits its advantage just the same as any other trading concern may do.

The validity of the act of March 22, 1920, conferring regulatory power upon the railroad commission with respect to gas companies and other common carriers, is questioned by the gas company upon several grounds, and it is further insisted that it is not embraced within the terms and provisions of the act but expressly excepted therefrom, since it was at the time of the passage of the act a duly incorporated company, operating under a franchise granted by the city of Ft. Thomas, and regulated by local authority and the franchise contract fixing and regulating rates charged for gas and the terms and conditions under which appellant company should furnish same. But we shall not go into that question, believing it sufficient for the purpose of this case to call attention, as we have, to the express purpose of the contract allowing appellant company to withdraw from the city as indicated above, and to briefly direct attention to one other clause of the act.

Appellee city relies upon subsection 23 of section 201e, Kentucky Statutes, as authorizing the relief prayed because, as it says, the gas service was continued without obtaining a new franchise. True, the service was continued, but it was under mandatory orders of the court and over the protest and against the objection of the gas company. Had the gas company voluntarily continued to furnish gas to the city and other consumers after the expiration of the franchise it would have brought itself within the provisions of this subsection and become subject to the jurisdiction of the railroad commission, if the act should be finally held constitutional. But it did not do so, but only supplied gas in pursuance to the mandatory direction of the court, and, therefore, did not come within the provisions of this section.

It is not deemed necessary to go into a discussion of the constitutional questions presented, since we have arrived at the conclusion that the franchise contract, and especially section 12 thereof, permitting appellant gas company upon giving the thirty days' notice specified, to withdraw its service from appellee city in all cases where such gas service was not voluntarily contracted by the company, makes it unnecessary for the purpose of this case to do so.

We are constrained to hold that the lower court erred in granting the injunction restraining the gas company from turning off the supply of gas, but expressly refrain from the determination of all other questions not specifically passed on in this opinion.

Judgment reversed.