## Maysville Water Company v. Stockton.

(Decided May 17, 1927.)

(Rehearing Denied, with Modification, November 29, 1927.)

### Appeal from Mason Circuit Court.

1. Statutes.—That persons in their dealings with each other have made mutual mistake as to construction of law gives neither of them right to insist that mistake shall be continued in future.

2. Statutes.—Doctrine of contemporaneous construction cannot arise on single mistake, but only from general course of conduct.

3. Waters and Water Courses.—Ordinances fixing rates for use of water by public must be construed in favor of property owner in case of doubt, as against water company.

4.  Waters and Water Courses.—No right will be presumed in favor of water company under ordinances regulating water rates to be charged, except those specified or fairly implied from rights granted, and no right can be implied from mere silence of ordinance.

5.  Waters and Water Courses.—Owner of apartment house containing eight apartments, with access to street through common halls and with common hot water service, held entitled to continuance of meter rate, where ordinance providing annual water rates, though referring to dwelling houses, did not include apartment buildings.

BROWNING & REED and WORTHINGTON, BROWNING & REED for appellant.

B. S. GRANNIS for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

In 1879 the city of Maysville enacted an ordinance under which the Maysville Water Company supplied water to the inhabitants of the city at annual rates or at meter rates, as provided in the ordinance. Some years after this E. T. Kirk proposed to put up an apartment house, the first ever constructed in the city. This building is four stories high and contains eight apartments, two on each floor. The apartments are entirely separate from each other; there is a common hallway in the front of the building, into which each apartment opens. There is a single water service for the building, which is heated by a heating plant in the basement; also a laundry in the basement for the common use of all the tenants. The owner of the building has the basement and halls kept clean. The hot water is used by all the tenants; each has a separate kitchen and bathroom, with the usual appurtenances.

When Kirk proposed to build the building, he went to see the president of the water company, and it was agreed between them that a single meter should be installed in the building, and that all water supplied should be charged at meter rates and paid by Kirk as a single consumer. He built the building, and for 11 years the water was supplied and paid for at meter rates under this arrangement. But in the year 1924, the president of the company having died, and a new president coming in, the water company declined to furnish water any

longer to the building at meter rates, and insisted that each apartment was a dwelling house, within the meaning of the ordinance, and must pay dwelling house rates, as provided in the ordinance. This litigation followed. The circuit court decided against the water company, and it appeals.

It is stipulated in the record that so much of the ordinance as is material to the case is in these words:

"Be it further ordained, that the said company shall have the power and authority to make and enforce, as a part of the condition upon which it will supply water to consumers, all needful rules and regulations not inconsistent with the law or conditions of this ordinance, and may charge for the supply of water to the inhabitants of the said city, annual rates not exceeding the following tariff, and may collect the said rates in advance:

Annual Schedule of
Water Rates.

| | |
|---|---|
| Ale cellars | $10.00 to $20.00 |
| Barber shops, one chair | 5.00 |
| Barber shops, each additional chair | 3.00 |
| Bathing tubs, public, each | 10.00 |
| Bathing tubs, private, hot and cold each | 6.00 |
| Bathing tubs, private, cold | .2.50 |
| Banks, including one basin | 10.00 |
| Bakeries | 10.00 to 30.00 |
| Butcher shops | 10.00 to 20.00 |
| Brickyards | Special |
| Breweries or distilleries | Special |
| Book binderies | Special |
| Building purposes, per 1,000 bricks | .10 |
| Building purposes, perch of stone | .10 |
| Building purposes, plastering, per 100 sq. yds. | .20 |
| Blacksmith shops, one forge | 5.00 |
| Blacksmith shops, each additional fire | 4.00 |
| Boarding houses, in addition to dwelling house, rates for each room additional | 2.00 |
| Churches | 10.00 |
| Confectioneries | 10.00 to 50.00 |
| Dwelling houses, four rooms or less | 5.00 |
| For each additional room | 1.00 |
| Dyeing and scouring | 10.00 to 30.00 |
| Elevators | Special |
| Filling private cisterns, each time | 3.00 |
| Fountains, six hours per day, in season of six months | Special |
| Gasworks, meter or | Special |
| Halls and theaters | Special |
| Hose for sprinkling lots, per season, one-half inch pipe, fifty feet square or less | 4.00 |
| Hose, for sprinkling lots, per season, one-half inch pipe, 75 feet square, or less | 5.00 |
| One-half inch pipe, one hundred feet square or less | 6.00 |

'Annual Schedule of
Water Rates.

| | |
|---|---:|
| Hose for sprinkling street and sidewalks, washing windows, per front foot | $0.25 |
| Corner lots, double rates. | |
| Hose, when used as fountain, fountain rates. | |
| Hotels | Special |
| Lumber yards | Special |
| Laundries | Special |
| Manufactories | Special |
| Offices, with basin | 5.00 to 10.00 |
| Photograph galleries | 10.00 to 20.00 |
| Packing houses | Special |
| Printing offices | Special |
| Railroad depots | Special |
| Restaurants | 10.00 to 20.00 |
| Sleeping rooms, not in dwellings | 5.00 to 10.00 |
| Schools, fifty pupils or less | 10.00 |
| Schools over fifty pupils, for each 100 pupils | 10.00 |
| Stables, private, one horse and washing carriage | 6.00 |
| Each additional horse | 2.00 |
| Each cow | 2.00 |
| Livery, by meter, or | Special |
| Steam boilers | Special |
| Saloons | 10.00 to 20.00 |
| Stock yards | Special |
| Steam engines, per horse power under ten | 5.00 |
| Steam engines, per horse power over ten | 4.00 |
| Stores | 5.00 to 10.00 |
| Urinals, public | 10.00 |
| Urinals, private | 6.00 |
| Wash basins, stationary in dwelling house, first one | 6.00 |
| Water-closets, public | 10.00 |
| Water-closets, private | 8.00 |
| Warehouses | Special |
| Water carts, per one hundred gallons | .05 |
| Meter rates, one hundred to five hundred, per gallons per day, per one thousand gallons | .40 |
| Five hundred to one thousand gallons per day, per thousand | .30 |
| One thousand gallons per day and over | .25 |
| Kitchen sinks | Special |

It is alleged in the petition, and not denied in the answer, that the ordinance contains also the following provision:

"This schedule of rates is given as a maximum, which cannot be increased, but the adjustment of rates is otherwise left to the business interests of the parties."

The fact that the water company supplied water to this house for 11 years under the agreement above referred to, and that the house was built on the idea that the water would be supplied at this rate, gave the owner of the property no right to a continuance of this rate, if it was not warranted by the ordinance; for all the parties

were bound to take notice of the law, and the fact that there was a mutual mistake made as to the law would give no right to either of them to insist that such a mistake should be continued in the future. This is not a case of contemporaneous construction, for that doctrine is never applied to a single case. This was the only apartment house in the city. If the parties were mistaken as to the meaning of the ordinance, it was only a mistake as to this building, and a contemporaneous construction cannot be said to arise on one mistake. It only arises from a course of conduct, not from one isolated case. So the question here is: What is the meaning of the ordinance?

In 28 Cyc. p. 388, the rule as to the construction of municipal ordinances is thus stated:

"Municipal ordinances and by-laws are construed by the same rules as statutes of the General Assembly."

In giving the rules for the construction of statutes, after a statement of the cases in which the rule of liberal construction is applied, this is added:

"On the other hand, statutes in derogation of common rights, or conferring special privileges on individuals or corporations, should be construed strictly against those specially favored." 36 Cyc. p. 1173.

Again, on page 1177 of the same volume, this is said:

"As a general rule, legislative grants of property, rights, or privileges must be construed strictly in favor of the public; and whatever is not granted in clear and explicit terms is withheld. The rule is especially applicable to gratuitous grants made at the instance of the parties benefited, and to grants of corporate franchises and privileges."

In cases of doubt such ordinances must be construed in favor of the property owner. No rights will be presumed to be granted, except those specified, or fairly to be implied from what is granted. A right claimed by the water company cannot be implied from the mere silence of the ordinance.

A distinction must be drawn between "dwelling houses" and "dwellings." There are many dwelling

houses occupied by two families. It is still a dwelling house, though the owner may live in one part of it and another family in another part. It thus becomes two dwellings, but it is only one dwelling house. The unit for the flat rate is the dwelling house. A man owning an entire block cannot put up eight houses on it and demand a single meter rate for all of them, as he owns them all. The unit is the "dwelling house," and, there being eight dwelling houses, the flat rate must be paid on each dwelling house. If, however, he builds one apartment house on the block, covering the whole block, and 40 families have their dwellings in it, there is still but one house on the block, though it houses 40 families; it is not 40 dwelling houses.

The apartment building, which was unknown in the city when the ordinance was passed, is not covered by the flat-rate provisions of the ordinance. The owner may at his cost put in a meter and pay at meter rates, where he uses the required amount of water. Appellee's house contains 8 dwellings, but it is not 8 "dwelling houses." It is one house, used by 8 families.

Berends v. Bellevue Water Co., 119 Ky. 8, 82 S. W. 983, was entirely unlike this case. In that case Berends owned a lot in Bellevue fronting 100 feet on Poplar street. On that lot he had built six tenements, with one roof over them. The tenements were separated by solid walls. Each had its separate entrance, and each had a separate yard attached to it, inclosed by a board fence 5 feet high. The tenements would not have been more distinct, if for convenience the roof had not been joined. The opinion in that case rests upon the following quotation from Bouvier's Law Dictionary:

> "If a house, originally entire, be divided into several apartments, with an outer door to each apartment, and no communication with each other subsists, in such case the several apartments are considered as distinct houses."

Each of the tenements had an outer door to the street, and had no communication whatever with any other. On the other hand, in this case none of the apartments have an outer door. None of them have access to the street, except through the halls, which are used in

common by all the apartments, and each of the apartments, through these halls have access to the others. In addition to this, the stairways are used in common; the hot-water service is furnished from the basement, and is used by all of them in common, and all the apartments use in common the laundry. No dwelling house is complete without laundry appliances.

In the Berends case it was simply held that the apartments there were in substance each a house. But that case is not this case at all. In addition to this, in that case the ordinance by express terms excluded that structure from being entitled to a meter rate, and the parties had for years acquiesced in the water rate charged to each separate apartment. In all our cities there are houses having roofs joining, but they are, notwithstanding this, separate houses, within the meaning of such an ordinance, for the fact that there is no break in the roof is only for convenience.

In this case the apartment building is a structure not named in the ordinance, and not within the contemplation of the parties in any of the specifications of the ordinance, and is therefore governed by the meter rate.

Judgment affirmed.

Judge Rees not sitting.