## City of Ludlow v. Union Light, Heat & Power Company et al.

(Decided December 3, 1929.)

814

JACKSON & WOODWARD for appellant.

GALVIN & TRACY for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY—
Affirming.

The franchise of the Union Light, Heat & Power Company for supplying the city of Ludlow with natural gas expired in August or September, 1929; the exact date is now immaterial. On July 18, 1929, the municipality provided for the sale of a new franchise and bids were asked therefor. The bid of the appellee company was the only one received, and it sought the franchise with a basic rate of 80 cents per 1,000 cubic feet, whereas the one in the old franchise was 40 cents. This bid was rejected. On August 6th the company served notice on the mayor and board of councilmen that on the expiration of its franchise it would "discontinue, terminate and withdraw its said gas service and will not continue to furnish any gas service in the municipality after midnight of August 11, 1929." On August 10th the city filed suit against the appellee and its officers to enjoin the discontinuance. A restraining order issued, but a temporary injunction was denied by the lower court. On motion made before the Chief Justice of this court, with three other Judges concurring, that order was set aside, and it was directed that the status quo be maintained pending a final determination.

The petition as finally amended sets up the facts stated above, and in addition alleges in substance that the company had its equipment installed in the city; it was the only company engaged in the business of supplying natural gas to municipalities in northern Kentucky;

that the city was dependent upon the defendant for that commodity, averred to be a necessity for the preservation of the health and convenience of the inhabitants; that the terms under which the company was asking a new franchise and the proposed rates are unfair, unjust, and unreasonable; and that the notice of discontinuance was inadequate and insufficient in time to enable the city to make other arrangements, if such other arrangements could be made. It further set up an ordinance passed on September 12, 1929, by which the city undertook to prevent a discontinuance of the service and to fix the price of gas furnished by any public service corporation to the citizens at 37 cents base; and also the fact that the city had filed with the Railroad Commission of Kentucky an application to have that body fix reasonable and equitable rates for natural gas to its citizens, but that the company was claiming the commission had no jurisdiction or power to fix rates. A permanent injunction and a declaration of rights in the premises were asked. Demurrers were sustained to appellant's pleadings, and this appeal follows.

The grant and acceptance of a franchise is but a contract, and its obligations are binding on both parties. A contract expires according to its terms. In accordance with the constitutional limitation, the contract entered into between appellant and appellee in 1909 expired at the end of 20 years. There was no contractual relation between the parties after that period. Board of Education of Somerset v. Kentucky Utilities Company 231 Ky. 484, 21 S. W. (2d) ——. It is universally held that, when a franchise contract terminates, the mutual rights and liabilities are at an end. The property used by the franchise owner does not cease to be its property and it has the right to remove it from the streets, and, upon failure to exercise that right, may be compelled to do so. However, the courts in the interest of justice and equity have held that a reasonable time should be given for the removal of the physical properties, for, obviously, there could be no instant removal on a discontinuance of the service; also under some circumstances courts of equity have interposed their powers to prevent a discontinuance of service for the time being, as has been done in this very case, until the rights of the parties could be fully adjudicated.

In anticipation of the difficulties which might be encountered, the General Assembly at its 1926 session di-

rected that the legislative body of a municipality should provide at least 18 months before the expiration of any franchise for the sale of a similar franchise. That procedure was not followed by the City of Ludlow in this instance.

The question sharply presented is: Can the city coerce the gas company into the making of a contract with it upon reasonable terms? The fact that the appellee is engaged in selling a commodity which has become a great public convenience and has available means for its delivery does not thereby make the company different from other parties competent to enter into any other kind of a contract. The courts do not have such power of coercion, any more than they have the power to arbitrarily compel the city to enter into a contract concerning which it may exercise its own will and discretion. The Act of 1922 which is now incorporated in the statutes as section 3490, subd. 36, does not, as the appellant contends, undertake to bestow power on a municipality to coerce a public corporation to contract with it. It simply vests the power in the governing authority of a city of the fourth class to provide the inhabitants with gas and the other facilities named, either by contract with a person, firm, or corporation, or through ownership or lease and operation by the municipality. By its specific terms it purports to bestow on the cities power only to regulate rates and the quality of service being rendered under charters or franchises granted prior to the adoption of our present Constitution. The act has no application here. The exercise of that power where the public service corporation is operating in the city by sufferance or as a mere licensee, as considered in Hardin County Telephone Co. v. City of Elizabethtown, 227 Ky. 778, 14 S. W. (2d) 162, is not involved in this case.

It is said that the company could, under the authority of Northern Kentucky Mutual Telephone Co. v. Bracken County, 220 Ky. 297, 295 S. W. 146, compel the city to advertise and sell a franchise. Therefore, says the appellant, the city ought to have the power to compel the purchase of a franchise. An examination of that case will show it is inapplicable. The facts are materially different, and the opinion cannot be given the very broad interpretation undertaken to be placed upon it.

Likewise is the recent case of United Fuel Gas Co. v. Railroad Commission of Kentucky, 278 U. S. 300, 49

S. Ct. 150, 73 L. Ed. —, inapplicable. It appears in that case that, although the municipal franchises under which the companies had been operating and supplying gas to several cities in Northeastern Kentucky had expired, the companies had continued and were expecting to continue to render the same service. Upon application the Railroad Commission of the state had fixed certain rates as reasonable and the companies appealed to the federal courts. The Supreme Court, predicating its consideration of the case upon the assumption of the validity of section 201e1 et seq., Kentucky Statutes (it declining to enter into the question of constitutionality), and the fact that the companies were legally doing business in the state and under the statute were subject to the state regulation and control by the commission as an agency of the state, sustained the rates fixed by it as reasonable. Obviously that is a different case. Here the company by its act is disclaiming any purpose to continue doing business in the municipality, and is asserting its legal rights to withdraw from the city and cease doing business there. The city is striving to prevent the cessation and to compel a continuance.

Neither are applicable those cases in which railroad companies have been denied the right to abandon portions of their roads, for they operate under perpetual franchises and under statutes controlling them. Nor is that line of recent cases which related to the regulation of transportation of the public by motor busses pertinent, for they are like those cases where the franchises themselves contained reservations by the grantor of the right of regulation. The conditions and powers invoked in those instances were constituent parts of the franchise contracts.

This case must be decided upon the same principles as was Union Light, Heat & Power Co. v. City of Ft. Thomas, 215 Ky. 389, 285 S. W. 228. That is a parallel case and controlling authority. The court has no disposition to depart from it, for it is based upon reasons cogent and logical, and principles equitable and sound, although, because of the particular situation, inconvenience and hardship may have resulted to the citizens. Appellant seeks to avoid its effect by claiming a distinction between it and this case. It points out that in the. Ft. Thomas franchise there was an option granted and retained by both parties to terminate the contract at the expiration of 10 years upon notice and that the city had thereby agreed that the company might withdraw, while

in this case there is no such provision. This franchise terminated itself at the expiration of 20 years without any action on the part of either party. That is the only difference in that respect.

The second distinction claimed is that there was not involved in the Ft. Thomas case an ordinance such as that adopted by the city of Ludlow on September 12, 1929, which ordered and directed that companies engaged in the business of supplying gas to the inhabitants of the city should continue to do so and not discontinue that supply without the consent of the city, and requiring that it should be operated at a rate not exceeding 37 cents base. For the reasons already given, the court is of the opinion that the city was without authority to enact that ordinance, and that it is invalid and ineffective.

The appellant asks that it be declared to possess the right to have the Railroad Commission compel a continuance of service on a reasonable basis. Section 201e1 of the Statutes, defining the scope of the powers of the Railroad Commission, places natural gas companies under its jurisdiction, but specifically declares that the provisions of the act shall not embrace the operation of such companies "in any city where the rates are now or may be regulated by local authority." Subsection 23 of that statute (Ky. Stats., sec. 201e23) provides that, if a public service company, after the expiration of its franchise in any city, continues its business without obtaining a new franchise, it shall be subject to the jurisdiction and authority of the commission, and shall not withdraw its service without first obtaining permission of the Railroad Commission, so long as it remains in business in this Commonwealth or any part thereof. It is, therefore, argued that, if the city has no compulsory and regulatory power under section 3490, subd. 36, then, under this statute and in the exercise of its police power through this agency, the state should and ought to regulate and bring into subjection the appellee company as a public service corporation doing business within the state, and that the state should be considered the unit in this regard. That would seem to be what is intended by section 201e23. But the use of the streets of the city and the granting of franchise rights therein is vested in the municipality by the plain provision of section 164 of the Constitution. In exercising that power a municipality may, of course, attach conditions and reservations, but whatever rights are granted must be in the specified manner, and a contract otherwise

entered into would have no validity under the Constitution. All of these things, as well as the monopolistic and masterful situation of the gas company, were considered and determined in the Ft. Thomas case adversely to appellant's argument.

After our decision in the Ft. Thomas case, the city appealed to the Railroad Commission for relief, and it entered its order directing a continuance of the service. The company sought an injunction in the United States District Court (17 F. (2d) 143) prohibiting the enforcement of the order of the commission. The case was heard by a statutory three-judge court, composed of Judges Moorman, Dawson, and Hicks. That court enjoined the commission from enforcing its order, on the ground that any act on its part to force a continuation of the service after the expiration of the franchise would be writing into the contract an obligation which the company did not assume, and hence would violate the provisions of the United States Constitution relating to the impairment of a contract, and would as well be depriving the company of its property without due process of law. It also held that the construction of the act contended for by the city, namely, that the Railroad Commission has the power to compel and regulate service within the municipality would be in effect to say that the General Assembly had the right to confer upon the commission the power to set aside the mandatory constitutional provisions of sections 163 and 164, which took away from the Legislature the power to grant local franchises and expressly vested that power in the municipality.

This court does not think it necessary here to pass on the constitutionality of the acts of the Legislature referred to, for we are of the opinion that they have no application to the facts of this case. The public service company in this instance has not continued its service without obtaining a new franchise, except for the time being under the mandatory order of this court.

In conclusion, answering the questions propounded as to a declaration of rights, and as a resume of the opinion it may be said: (1) That the city, in the absence of a franchise, cannot compel the company to continue its service, and, consequently, has no right to fix the rate at which the service should be rendered (except, of course, in a franchise regularly created); (2) the Railroad Commission of the state is without jurisdiction in

the matter; and (3) the company does have the right to withdraw its service.

However, in view of the circumstances and the great inconvenience, and perhaps hardship, to the citizens which would result from an immediate discontinuance of the gas service, a reasonable time should be granted for an adjustment to the situation after this final adjudication. The court will continue in force for 60 days after the date of this opinion the injunction heretofore entered prohibiting a discontinuance of the service. Subject to this limitation, the judgment is affirmed.

Whole court sitting.

Judge THOMAS dissents from so much of the opinion as provides for a further extension of the injunction, on the ground that this court is without power to enter such order.