## Kentucky Utilities Company v. City of Paris et al.

(Decided February 17, 1931.)

GORDON & LAURENT for appellant.

WILLIAM BLANTON for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

The city of Paris and two individual gas consumers, for the benefit of themselves and all other gas consumers of the city, instituted an action against the Kentucky Utilities Company to recover a fund, voluntarily impounded by the defendant, representing the amounts collected from gas consumers in excess of 40 cents per thousand cubic feet of gas consumed during the period from December 1, 1925, to December 1, 1927. It was sought also to prevent the defendant from charging or collecting any amount for gas in excess of 40 cents per thousand cubic feet of gas sold in the city of Paris during the life of the existing franchise. The circuit court sustained a demurrer to the defendant's answer, counterclaim, and cross-petition and awarded the plaintiffs the entire relief sought by them. The defendant has prosecuted an appeal from the judgment. The facts necessary to an understanding of the case may be briefly recited.

In March, 1913, the city of Paris sold the franchise now owned by the appellant, and under which gas is being supplied to the city and its inhabitants. At that time the gas rate in Paris was 40 cents per thousand cubic feet, with 5 cents discount for prompt payment, and corresponded with the rates prevailing in Lexington, Winchester, and Mt. Sterling, the four cities being served by the same company. But the franchises in Lexington, Winchester, and Mt. Sterling had been granted in 1905 and would expire in 1925.

In August, 1913, the original purchaser sold its Paris franchise to the Paris Gas & Electric Company, and on December 27, 1923, it was acquired by the appellant. The franchise expires by its terms in March, 1933.

The taproot of the present controversy is found in section 12 of the franchise, which reads:

"It is agreed that the company at the commencement of business shall charge for natural gas 35 cents net, per thousand cubic feet . . . and that this rate shall not at any time, during the term

of this franchise, exceed 55 cents per thousand cubic feet, at standard pressure, for natural gas (that is, a charge of 55 cents per thousand, with an allowance of 5 cents per thousand if the consumer's bill is paid on or before the 10th day of the following month); and the company shall furnish to any citizen of the City of Paris natural gas at a price not exceeding the above rates. . . .

"But it is further provided that the minimum rate of thirty-five cents (35c) net shall be in force and remain in effect for the same length of time in Paris, that the said rate is effective in Lexington, Winchester and Mt. Sterling, or any of them, and when an increase in the rates is made at any time in those cities, a similar increase shall become effective and operative in Paris.

"And at no time shall the net rate charged in Paris be more than the net rate charged in any one of the hereinbefore named cities."

Prior to 1925, at which time the franchises in Lexington, Winchester and Mt. Sterling expired, the gas company serving those three cities sought in vain to negotiate new franchises. At the expiration of its franchises in those cities the gas company gave notice that the service would be discontinued. Litigation was thereby precipitated, and during its pendency agreed orders were entered requiring the gas company to continue the service, and permitting it to charge a rate of 50 cents net per thousand cubic feet, but upon the condition that 10 cents of the charge should be impounded to abide the final fixing of a lawful rate. If the rate ultimately established as the lawful one was less than 50 cents, the impounded funds were to be used to refund to the consumers any excess above the lawful rate that had been exacted from them. If the lawful rate was finally determined to be as much as 50 cents, the impounded funds would belong to the gas company.

The arrangement thus made was carried out in all three cities, until a new franchise was granted the company by each of them.

The new franchises, however, did not fix the gas rate, but left it to the State Railroad Commission to determine and prescribe a reasonable rate for the service. Pending a final determination of the rate, it was agreed by the terms of the franchise that the gas company should be authorized to charge 50 cents per thous-

and cubic feet for supplying gas with the facilities then possessed, but when certain additional facilities were provided, the gas company would be entitled to charge and collect 60 cents, provided 10 cents thereof would be impounded to abide the final result of the proceedings to establish a lawful rate. If the final rate was less than the tentative one, the impounded funds would be used to reimburse the consumers for the overcharge they had been paying in the meantime. Otherwise, the money would belong to the gas company. The additional facilities were furnished and the 60-cent rate has been charged and collected since December 1, 1927.

The arrangement described applied to Lexington, Winchester, and Mt. Sterling. The Kentucky Utilities Company has never charged more than 50 cents for gas sold in the city of Paris, and during the period from December, 1925, to December, 1927, it impounded 10 cents of the charge as security to the gas consumers that a refund would be made if it turned out that the rate was unauthorized. In short, the Paris charge for gas has conformed to the conditions prevailing in the cities of Lexington, Winchester, and Mt. Sterling.

The question is whether the rate increases made in the manner and under the conditions stated in Lexington, Mt. Sterling, and Winchester justified the appellant in making a similar increase in Paris. The franchise constitutes a contract, and its obligations are binding upon both parties. City of Ludlow v. Union Light, Heat & Power Co., 231 Ky. 815, 22 S. W. (2d) 909.

The construction of the contract is a simple and easy task, for its terms are plain and unambiguous. It first limited the rate to be charged in any event at not exceeding 55 cents, with an allowance of 5 cents for prompt payment; and it then plainly provided that the 35-cent net rate should continue in effect for the same length of time it prevailed in Lexington, Winchester, and Mt. Sterling, or any of them, and when an increase in rates was made in those cities a similar increase should become effective and operative in Paris. The position of Paris is that it was not affected by tentative arrangements or evanescent conditions in the neighboring cities, but was entitled to be served at the old rate until a higher legal rate was finally fixed and determined in the other cities. It is assumed that the word "rate," as used in the franchise, contemplated nothing but a permanent rate lawfully established.

It is argued that the agreed orders fixing a rate for the service during the existence of the controversy were void for any purpose and afforded no excuse for an alteration of the rates in Paris.

But the agreed orders were not void, or in violation of sections 163 and 164 of the Constitution. Certainly no franchises could be granted, except in the manner provided by those sections. People's Electric Light & Power Co. v. Capital City Gas & Electric Light Co., 116 Ky. 76, 75 S. W. 280, 25 Ky. Law Rep. 327; Hilliard v. Geo. G. Fetter L. & H. Co., 127 Ky. 95, 105 S. W. 115, 31 Ky. Law Rep. 1330; Merchants' P. & D. T. Co. v. Citizens' Telephone Co., 123 Ky. 90, 93 S. W. 642, 29 Ky. Law Rep. 512; Union Light, Heat & Power Co. v. City of Ft. Thomas, 215 Ky. 384, 285 S. W. 228; City of Ludlow v. Union Light, Heat & Power Co., 231 Ky. 813, 22 S. W. (2d) 909. But the necessities of the situation could not be disregarded. The court, at the instance of the city, compelled the company to serve for the time being, and so long as it was made to serve it was entitled as a matter of justice and right to a reasonable compensation for the service. Board of Education v. Ky. Utilities Co., 231 Ky. 484, 21 S. W. (2d) 817. The court could not make a contract for the parties, but it could condition the relief granted by it so as to avoid hardship and injustice. 21 C. J. p. 660, sec. 845; Toledo R. Co. v. Penn. Co. (C. C.) 54 F. 746, 19 L. R. A. 395; Joy v. St. Louis, 138 U. S. 1, 11 S. Ct. 243, 34 L. Ed. 843; City of Earlington v. Powell, 226 Ky. 353, 10 S. W. (2d) 1060. The rate charged under the agreed orders was the only rate there was at that time, and it was approved by the court which constituted at the time the only authority that had jurisdiction in the matter. For the time being, at least, it was the prevailing rate, lawfully established, and subject only to the conditions upon which it was predicated. The city of Paris was not a party to the agreed orders, but it had granted a franchise by which it had agreed to permit its grantee to charge a higher rate when an increase of rates was made in the cities mentioned in the contract. The parties saw fit to adopt as the measure of their respective rights the action that might be taken in the other cities, and there is no reason for relieving them from the application of the standard they selected. The contracting parties necessarily contemplated a practical, and not a theoretical, application of the rule. It cannot be doubted that they meant to

operate on an equality with the cities specified in the franchise, and it would be wholly impractical to apply the terms of the franchise according to the present contention of the city of Paris. If the gas company could not change its rate in Paris until the legal rate was finally established in the neighboring cities, it might be deprived of its lawful rights during a long controversy, and left at last without remedy when the legal rate was ultimately settled. On the other hand, by conforming to the actual conditions as they arose, the power was preserved to do justice to all parties, by a readjustment and disbursement at the termination of the dispute. The Constitution controls the methods of granting franchises, but it makes no provision for temporary rates in the absence of a contract by the parties, except the rudimentary requirement of reasonableness applicable to all parties under all circumstances.

It is plain that the gas company was within the rights conferred by its franchise in conforming its charges in Paris to the conditions prevailing in Lexington, Winchester, and Mt. Sterling. It is equally clear that it was entitled to charge the 50-cent rate after December 1, 1927. But the record fails to disclose any final determination of the legal rate prevailing in Lexington, Winchester, and Mt. Sterling during the period the money in question was impounded in Paris, and for that reason it cannot now be determined who is entitled to participate in that fund. The action as respects that matter will have to be dismissed without prejudice to the rights of either party.

The appellant insists that it was entitled to a declaration of its rights on its cross-petition against the Central Kentucky Natural Gas Company, and that the lower court erred in sustaining the demurrer of the city to that pleading. In view of the conclusion we have reached, the petition of the plaintiffs will have to be dismissed without prejudice, and if the appellant still desires a declaration of its rights as against the city and the Central Kentucky Natural Gas Company, it will have to bring an action for that purpose. The present record, with an indispensable party absent, does not authorize an examination of the interesting questions suggested.

For the same reason, we are not now called upon to discuss or determine the question raised as to the right of the city and individual gas consumers to prosecute an

action upon the assignments of claims against appellant for the benefit of a nonresident.

The plaintiffs were not entitled to enjoin the collection of the 50-cent rate, and manifested no present right to collect any portion of the impounded funds. It follows that the action should be dismissed without prejudice.

The judgment is reversed for proceedings not inconsistent with this opinion.