## Union Light, Heat & Power Co. v. City of Covington et al.

Feb. 23, 1940.

As Modified on Denial of Rehearing April 26, 1940.

Johnst Northcutt, Judge.

Galvin & Tracy for appellant.

Ralph Rich, Frank J. Hanlon and Earl Rodney King for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Modifying and affirming.

By proceedings, the regularity of which is not questioned, the appellant in December, 1926, acquired a franchise for the furnishing of natural gas to consumers in the City of Covington during the period from January 10, 1927, to and including January 10, 1932. Without setting forth in detail the provisions of the ordinances creating the franchise, it is sufficient to say that after prescribing an initiatory rate for the period from January 10, 1927, to June 1, 1927, and a higher rate effective during the remainder of the five year period, the franchise provided:

"The above schedule of rates and charges for natural gas to be supplied by the company hereunder during the period from and including June 1, 1927, to and including the 10th day of January, 1932, is the same schedule of rates and charges for natural gas now in effect and charged by the Union Gas and Electric Company in the City of Cincinnati, Ohio. In the event during said period from and including June 1, 1927, to and including the 10th day of January, 1932, a lower schedule of rates and charges for natural gas supplied by the Union Gas and Electric Company to the City of Cincinnati, Ohio, and its inhabitants, is made effective and charged in the City of Cincinnati, Ohio, by said The Union Gas and Electric Company, either (a) by the voluntary action of the Union Gas & Electric Company, (b) by agreement between the Union Gas and Electric Company and the City of Cincinnati, Ohio, (c) by a schedule of rates and charges fixed by the City of Cincinnati, Ohio, and enforced by final judicial decree or judgment in the event the validity of said schedule of rates and charges is litigated, the Company will, in the month next succeeding the month in which said lower schedule of rates and charges is in force and effect in the City of Cincinnati, Ohio, or in the month next succeeding the month in which the final decree or judgment is entered, apply said lower schedule of rates and charges to the consumption of natural gas thereafter in the City of Covington during any unexpired portion of the said period.

"In the event a lower schedule of rates and charges is made effective as above provided in the City of Covington during the period from and including June 1, 1927, to and including the tenth day of January, 1932, and thereafter during said period or any portion thereof, the schedule of rates and charges for natural gas supplied by the Union Gas and Electric Company in the City of Cincinnati is increased, such increased schedule of rates and charges for natural gas will, in the month next succeeding the month in which such increased schedule of rates and charges was made effective in the City of Cincinnati, Ohio, be applied to the consumption of natural gas in the City of Covington during any

unexpired portion of said period; provided, however, that in no event will the schedule of rates and charges in force and effect in the City of Covington during the period from and including June 1, 1927, to and including January 10, 1932, be in excess of the rates and charges set forth above in the schedule of rates applicable to said period. \* \* \*

"This bid and the acceptance thereof is conditioned upon the right of the Company upon the termination of said franchise period, namely, midnight of January 10, 1932, to discontinue the supply of natural gas within the City of Covington, and thereupon its rights within the said City of Covington to supply natural gas shall cease and terminate absolutely, and it may within ninety days thereafter remove its pipes and mains from the streets, ways and public thoroughfares of the City."

No new franchise was acquired by appellant for the furnishing of gas to consumers in Covington until July 14, 1932, and during the interim between the expiration of the former franchise and the acquisition of the new, gas was furnished by appellant in obedience to a temporary injunction granted but ultimately dissolved by the Circuit Court, concerning which, this Court, in the case of City of Covington v. Union Light, Heat & Power Co., 243 Ky. 591, 49 S. W. (2d) 580, 589, said:

"However, as in this case the same situation exists as was presented in the Ludlow Case, supra, [Ludlow v. Union Light, Heat & Power Co., 231 Ky. 813, 22 S. W. (2d) 909], we deem it proper to herein direct, as was therein directed, that, 'in view of the circumstances and the great inconvenience, and perhaps hardship, to the citizens which would result from an immediate discontinuance of the gas service, a reasonable time should be granted for an adjustment to the situation after this final adjudication. The court will continue in force for 60 days after the date of this opinion the injunction heretofore entered prohibiting a discontinuance of the service.' "

The July 14, 1932 franchise covered the period from August 5, 1932 to August 5, 1935, prescribed a scale of rates slightly different from those contained in the preceding franchise, and provided:

"In order that Covington consumers may have the benefit of possible future reductions in the Cincinnati rate, we agree if and whenever natural gas as provided for herein is furnished by the Union Gas & Electric Company to the City of Cincinnati and its inhabitants at a lower schedule of rates and charges than that set out herein, which lower schedule has been lawfully fixed by proper public authority and been finally upheld upon appeal or in litigation, if any, this bidder will thereafter put into effect and accept the same lower schedule of rates and charges in the City of Covington, beginning upon the regular billing dates in the month next succeeding the final fixing and upholding of said lower Cincinnati rate as hereinabove set out, and will keep same in effect only so long as said lower schedule is in effect in Cincinnati, but not longer than the term of the franchise herein bid for; provided, however, that in no event will the rates and charges in force and effect in the City of Covington during the term of the franchise herein bid for be in excess of the rates and charges set forth in the schedule of rates and charges set forth in Clause One of this bid."

By the passage of ordinances in 1930 and 1931 the City of Cincinnati took the initiatory steps prescribed by the Ohio Statute to bring about a reduction of gas rates in that City, and upon the passage of these ordinances the Company appealed to the Ohio Public Utility Commission, and, as required in such cases, executed a bond with surety conditioned as follows:

"The condition of this obligation is that the Gas & Electric Company shall refund to each of its consumers, public or private, the amount collected by it from the date said rates in said ordinances shall take effect and be in force in excess of the amount which shall finally be determined it was authorized to collect from such consumers, if any."

The execution of this bond had the effect under the Ohio Statute of vacating, pending the appeal, rates prescribed by the attacking ordinances, thus establishing the previous rate as the ad interim rate. City of Cleveland v. Public Utilities Commission of Ohio, 126 Ohio St. 91, 183 N. E. 924. During March, 1935, and before the Ohio Public Utilities Commission had decided the

controversy thus brought within its jurisdiction by the proceedings, a compromise was reached between the Company and the City of Cincinnati by which a new schedule of rates was adopted, and this compromise was carried into effect by an ordinance adopted by the City of Cincinnati on March 27, 1935. Section 5 of this ordinance provided as follows:

"For the purpose of settlement of the rate cases now pending before the Public Utilities Commission of Ohio, being numbers 6403 and 6852 on its docket, and being appeals from Ordinances Nos. 249-1930 and 12-1931, respectively, and for the purpose of determining the amount that the Company was authorized to collect from consumers of gas in the City of Cincinnati during the period covered by said ordinances up to the effective date of this ordinance, the City Solicitor is authorized and directed to compromise and settle said cases before the Public Utilities Commission of Ohio and to provide in said settlement that the said companies shall refund to each of its consumers, public and private, according to their monthly consumption, an amount as determined by the following schedule, which amount of money shall be determined to be the amount collected by the company in excess of the amount it was entitled to collect."

The schedule referred to, and which is set forth in the Cincinnati ordinance, is too lengthy to insert here. It is sufficient to say that it prescribed the amount to be refunded to residential, commercial, and industrial consumers calculated upon the cubic feet of gas consumed as reflected by their monthly bills without designating a specific interim rate as a basis for the refunds. Indeed, the undisputed testimony of the officials of the Company shows that a specific refund of $2,000,000 to the gas consumers of Cincinnati was agreed upon as a part of the compromise and in settlement of all liability incurred by the Company in the execution of the bond referred to. In other words, the amount paid in compromise was not determined by the ascertainment of a proper interim rate, but was fixed arbitrarily and distributed among the consumers proportionately to their consumption of gas. Following the passage of the March 27, 1935, compromise Cincinnati ordinance, appellant put into effect in Covington the new and lower

Cincinnati rates, but conceiving that it as well as the other gas consumers of Covington were entitled to a similar refund to that made to the consumers of Cincinnati, the City of Covington in its own behalf and for the benefit of all gas consumers of that city, instituted this action seeking such relief. Two individual gas consumers intervened, praying that they be permitted to prosecute the action for the benefit of all persons similarly situated. The issues were formed by proper pleadings, and the litigation has finally reached this Court on an appeal from a decree of the Chancellor adjudging—

"that the City of Covington and its inhabitant gas consumers, during the effective period covered in Covington ordinance 1855, from June 19, 1930, to January 10, 1932, and during the period covered by Covington ordinance 2826, beginning August 5, 1932, to and including August 4, 1935, are entitled to recover from the defendant Union Light, Heat & Power Company, a refund based upon the Cincinnati schedule of refund set out in Cincinnati compromise ordinance 111—1935, with ir' 'rest during said period, and it is further adjudged that for the period when the defendant was furnishing to the plaintiff city and its inhabitants, from January 10, 1932, to August 5, 1932, gas, under an order of court, that said plaintiffs and the inhabitant gas consumers are entitled to a refund of the excess charge over a reasonable rate, with interest, and it is further adjudged that a reasonable rate during said period is the previous franchise rate less the schedule of refunds made by the Union Gas and Electric Company to the City of Cincinnati and its inhabitant gas consumers, during said period as aforesaid.

"Said schedule of refunds to be made is as follows: * * *" (Here follows the Schedule of Refunds set forth in the Cincinnati Compromise Ordinances adopted March 27, 1935)

Briefly summarized, appellant's major contentions are that the franchise granted by the City of Covington contained no agreement by appellant to pay refunds, or language from which such agreement could be implied; that the appellant did not contract that the rate for gas in Covington would be the same as in Cincinnati;

that during the period covered by the first of the two franchises referred to, no new or lower rate was made effective in Cincinnati, since, under the Ohio law, the 1930 and 1931 Cincinnati ordinances were initiatory only and had no binding or operative effect until a proper rate had been determined by the Ohio Public Utilities Commission, as the result of compromise, on March 27, 1935; and that since the termination of the first franchise was complete and effectual as adjudged by this Court in the case of City of Covington v. Union Light, Heat & Power Co., supra, any liability which may have existed under that franchise was terminated on August 5, 1932. At all events, it is argued by appellant, no contract existed between the city and appellant during the interim between January 10, 1932, when the first of the two franchises referred to expired, and August 5, 1932, when the second franchise became operative, and this fact is emphasized, not only in support of appellant's contention that in no event could the Covington consumers be entitled to a refund during this period or the period covered by the preceding franchise, but in support of its contention that the provisions of the Covington franchise which became operative on August 5, 1932, with respect to reductions in the Cincinnati rate related solely to future reductions in that rate. Great emphasis is laid upon the fact that the amount of the refund to the Cincinnati consumers was not determined by the establishment of a proper rate for comparison with the former Cincinnati rate but was arbitrarily agreed upon in compromise of the liability which the Company had incurred on its bond executed pending its appeal to the Ohio Public Utilities Commission, and accordingly did not represent a reduction in the Cincinnati rates. Finally, it is argued that the City of Covington was without power to contract that the rate charged therein should be varied by rates charged in Cincinnati, and that, accordingly, so much of the franchise as imposed an obligation upon the appellant to reduce the Covington rates in the event the Cincinnati rate was reduced, was void, and hence, not binding upon appellant.

But, as in all cases involving the construction of contracts, the intention of the parties as expressed therein must prevail ,and, try as we may, we cannot escape the conclusion that the stipulations with refer-

ence to the Cincinnati rate were inserted in the franchise ordinances under consideration for the sole purpose of assuring Covington consumers that they would pay no more for gas consumed by them during the periods covered by the franchises than the Cincinnati consumers would be required to pay for similar quantities of gas during the same periods. If the $2,000,000˙ refunded the Cincinnati consumers did not operate to reduce the amounts paid by them for gas between May 14, 1930, when the first of the initiatory rate reduction ordinances was enacted, and March 27, 1935, when the compromise rate reduction ordinance was adopted, what effect did the refund have? Surely it did not reduce the amount paid by them for other commodities during that period. Was it a mere gratuity, and its method of distribution one of convenience only, as unrelated to the previous gas rate as a distribution made on the basis of previously paid water bills would have been? In justice to counsel for appellant, it should be said that he does not go so far as to claim that the distribution was a gratuity, but contends that since it was a payment of an arbitrarily agreed amount in settlement of an unliquidated liability, it was not properly a refund and in no event a reduction of rate. But however denominated, in practical operation it was a payment in the nature of a rebate which effected a reduction of the amount paid by the Cincinnati consumers for a given quantity of gas within a given period, and hence a reduction in rate within the provisions of the Covington ordinances requiring a similar reduction to the consumers of that city. Union Light, Heat & Power Co. v. City of Fort Thomas, 261 Ky. 100, 87 S. W. (2d) 103. For the proper rule of construction to be applied in cases of this kind see Corpus Juris, Volume 43, Section 915, page 573; Maysville Water Company v. Stockton, 221 Ky. 610, 299 S. W. 582.

By the provisions of the compromise settlement, the refund to the Cincinnati consumers was to reimburse them for the excess charges collected during the period between the enactment of the initiatory rate reduction ordinances and the enactment of the ordinance carrying the settlement into effect. Within this period occurred the lapse of approximately seven months between the expiration of the 1927 Covington franchise and the effective date of the 1932 franchise, and it is strenuously

insisted by appellant that in no event are the Covington consumers entitled to a refund on the amounts paid by them during this period—which were in àccordance with the rate previously existing. This argument may be sound insofar as it denies any contract right in the Covington consumers during this time, but it does not affect the result. The Chancellor had the right to adjudge that a reasonable rate should be charged during this period. Union Light, Heat & Power Company v. City of Fort Thomas, 215 Ky. 384, 285 S. W. 228. By the compromise settlement effected in Ohio it had been determined that the rate which had been charged in Cincinnati during that same period was excessive. Irrespective of any contract right in the Covington consumers, it was the Chancellor's duty under the circumstances of this case to adjudge, as he did, that the rate charged in Covington during the period referred to was excessive to the extent that it exceeded a similar rate modified by the refund decreed.

Appellant's argument that the inclusion in the Covington ordinances of the stipulations respecting the effect on the Covington rates of changes in the Cincinnati rate constituted an abdication by the City of Covington of its rate making power, and hence rendered the agreements respecting rates void, apparently overlooks the fact that the validity of such contracts has heretofore been recognized by this Court in the cases of Union Light, Heat & Power Co. v. City of Fort Thomas, 261 Ky. 100, 87 S. W. (2d) 103; Union Light, Heat & Power Co. v. City of Fort Thomas et al., 215 Ky. 384, 285 S. W. 228; and Kentucky Utilities Company v. City of Paris, 237 Ky. 488, 35 S. W. (2d) 873. Moreover, we do not construe the provisions referred to as constituting an abdication or delegation of the rate making power. By the terms of Section 3068, Kentucky Statutes, enacted pursuant to Section 164 of the Constitution, second class cities were authorized to grant franchises, and, of course, included within this power was the power to contract respecting the rates which were to be charged by the grantee. Had the ordinances under consideration provided that the rates to be charged should be determined by third persons or varied from time to time as conditions arose justifying variations, such provisions might be construed as delegating the rate making power. But the ordinances in question specifically designated

the maximum rates to be charged, and nowhere provided for any contingency upon the happening of which these rates might be increased beyond the maximum prescribed. To say that the City could not validly contract for a reduction of rates under specifically designated circumstances would be to deny it, not only the power conferred by the Constitution and Statute, but the power to act for the best interests of its inhabitants. Lutes et al. v. Fayette Home Telephone Company et al., 155 Ky. 555, 160 S. W. 179; Johnson County Gas Company v. Stafford, 198 Ky. 208, 248 S. W. 515. So much of appellant's argument as is based upon the Public Service Commission Act of 1934 (Kentucky Statutes 3952-1 et seq.) and the cases construing it, is inapplicable to the questions here involved. While it is true that this Court has held that the power conferred upon municipalities to contract with respect to rates in the first instance does not deprive the State of its right to exercise its police power of regulation, (Southern Bell Telephone & Telegraph Company v. City of Louisville, 265 Ky. 286, 96 S. W. (2d) 695) it is also true that the State did not exercise this power until the enactment of the Act referred to which became effective on June 14, 1934, long after the two franchises under consideration had been granted.

Complaint is made by appellant of the action of the Trial Court in permitting the appellees, Moore and Bennett, to intervene. Without passing upon the right of the interveners to sue on behalf of other gas consumers similarly situated, it is sufficient to say that we are unable to discover in what manner appellant has been prejudiced by the ruling complained of. The City sued for the benefit of all of its inhabitant gas consumers, and the judgment appealed from directs the appellant to refund to them the same proportion of their previously paid gas bills as was refunded to the Cincinnati consumers of the same quantity of gas. As we read the record, no relief has been granted the interveners differing from that awarded consumers who did not intervene, and no award has been made against appellant which would not have been made in the absence of intervention.

On the return of the case, the Circuit Court will ascertain the date subsequent to which the Covington consumers were charged the reduced rates provided for by

the Cincinnati compromise ordinance, and modify its judgment so as not to require refunds on bills for gas consumed subsequent to said date. As so modified the judgment is affirmed.

Whole Court sitting.

Judges Thomas and Fulton dissent from so much of the opinion as holds that refunds should be made for any period of time after August 5, 1932, the effective date of the second franchise.